# United States Court of Appeals
## For the First Circuit

No. 07-2272

FRANCIS HANNON,
Plaintiff, Appellant,

RAYMOND COOK; SEAN MILLIKEN; WAYNE D. CROSBY; LAWRENCE M.
MCARTHUR; KEVIN KING; HENRY LAPLANTE; WILLIAM WHITE;
CHRISTOPHER DEMARCO; ANGEL PIMENTAL; JOSEPH LODICO;
STEVEN BALSAVICH; and EDWARD KEITH,
Plaintiffs,

v.

JEFFREY BEARD and MARYJANE HESSE,
Defendants, Appellees,

MICHAEL T. MALONEY; PETER ALLEN; KRISTIE LADOUCEUR;
KENNETH DEORSEY; PAUL DUFORD; JEFFREY GRIMES; RICHARD MEDEIROS;
GILBERT LEMON, II; JOHN DOES 1-50; CLARK COLOR LAB;
VINCENT MOONEY; MASSACHUSETTS DEPARTMENT OF CORRECTIONS;
FREDERICK CALLENDAR; RICHARD MCARTHUR; JAMES SULLIVAN;
GARY FYFE; ROBERT KOLBER; and HERBERT BERGER-HERSHKOWITZ,
Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,
Wallace,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

---

[*] Of the Ninth Circuit, sitting by designation.

Matthew J. Matule, with whom David S. Clancy and Christopher G. Clark, was on brief for appellant Hannon.

Claudia M. Tesoro, Senior Deputy Attorney General, with whom Thomas W. Corbett, Jr., Attorney General, Calvin R. Koons, Senior Deputy Attorney General, and John G. Knorr, III, Chief Deputy Attorney General, Chief, Appellate Litigation Section, was on brief for appellees Beard and Hesse.

April 28, 2008

**WALLACE**, <u>Senior Circuit Judge</u>.   Francis Hannon appeals from the district court's final order dismissing his claims against Jeffrey Beard and Maryjane Hesse for lack of personal jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm in part and reverse and remand in part.

**I.**

Hannon's claims against Beard and Hesse are part of a multi-party, multi-claim lawsuit filed in the district court for the District of Massachusetts.  Hannon and his fellow plaintiffs, all prisoners in Massachusetts, alleged various federal and state constitutional violations against numerous defendants, most of whom were officials in the Massachusetts Department of Corrections (DOC).  However, Hannon, who was convicted in Pennsylvania and has spent most of his prison time there, also included a claim against Beard and Hesse, who were officials in the Pennsylvania DOC during the time periods relevant to this action.

Since his 1978 conviction and incarceration in Pennsylvania, Hannon has been the quintessential "jailhouse lawyer," pursuing post-conviction relief and filing numerous grievances and lawsuits on behalf of himself and other prisoners challenging their conditions of confinement. Hannon estimates that he has represented "thousands" of his fellow inmates in proceedings.  He alleges that the Pennsylvania DOC grew tired of his lawsuits and agitation and, in order to prevent him from filing

more lawsuits and in retaliation for the actions he had already taken, began a strategy of transferring him to out-of-state prisons.

Transfers of state prisoners to prisons in other states are effected pursuant to the Interstate Corrections Compact (Compact), which generally permits states to contract for one state's incarceration of another state's convicts in consideration for payment. Pursuant to the Compact, Hannon was transferred in 1997 to a District of Columbia prison and, in the first several months of 2001, was transferred to another District of Columbia prison, two different Maryland prisons, and eventually back to Pennsylvania. In December of 2001, he was transferred from Pennsylvania to Massachusetts. Hannon alleges that his legal materials "disappeared" during the transfer to Massachusetts.

Hannon asserts that the decision to transfer him to Massachusetts was authorized and directed by Beard, the Secretary of the Pennsylvania DOC, in retaliation for Hannon's lawsuits against DOC officers. Hannon states that this fact was confirmed by prison personnel with whom he spoke. Though Beard asserted that he has not been involved with Hannon subsequent to the transfer, he did not deny involvement leading up to the transfer.

Once in Massachusetts, Hannon sent a number of letters to Hesse, a Pennsylvania DOC prison librarian, requesting legal materials. She responded several times, sometimes denying his

requests and sometimes sending requested material either to him or to a prison librarian in Massachusetts. At times, she sought legal counsel's advice to determine whether she was required to send the requested materials. She states that every time she denied a request for material, it was because legal counsel had advised her that she was not required to supply Hannon with it.

In 2003, Hannon filed a complaint against Beard and Hesse, as well as against numerous Massachusetts prison officials, in the Massachusetts district court. His claims against Beard and Hesse allege that they violated his First and Fourteenth Amendment rights and his rights under Articles XI and XII of the Massachusetts Declaration of Rights by transferring him between prisons, confiscating his legal materials, and refusing to provide him with requested legal materials.

In January 2007, after he filed this action, Hannon learned that he was to be transferred yet again. His emergency motion for a temporary restraining order enjoining the transfer was denied, and this was affirmed by us on appeal. He was transferred to New Jersey.

Beard and Hesse filed a motion to dismiss, arguing, among other things, that the Massachusetts district court lacked personal jurisdiction over them. On June 26, 2007, the district court granted the motion and dismissed Hannon's claims against Hesse and Beard for lack of personal jurisdiction. The court reasoned that

the long-arm statute did not reach Hesse or Beard because they did not "transact business" within Massachusetts: "The decision to transfer plaintiff and confiscate legal materials all occurred in Pennsylvania where the Pennsylvania defendants reside." The district court concluded that a transfer pursuant to the Compact does not alone constitute the transaction of business in Massachusetts. Because the district court dismissed for lack of jurisdiction, it did not reach any of the other grounds for dismissal argued in Beard and Hesse's motion to dismiss. Several of Hannon's claims against other defendants, as well as other plaintiffs' claims, survived motions to dismiss. Final judgment on the dismissal of the claims against Beard and Hesse was entered pursuant to Hannon's Rule 54(b) motion, and Hannon timely appealed.

## II.

It is axiomatic that, "[t]o hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'" Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999)). "The plaintiff bears the burden of proving the court's personal jurisdiction over a defendant." Daynard, 290 F.3d at 50. Under the prima facie standard, which the district court applied, we "accept the plaintiff's (properly documented) evidentiary proffers as true," and construe those facts

"in the light most congenial to the plaintiff's jurisdictional claim." Id. at 51 (internal quotation marks and citation omitted). We review the district court's application of this standard de novo. Id.

Hannon has not alleged that Beard or Hesse "has engaged in continuous and systematic activity" in Massachusetts; so, in the absence of general jurisdiction, the court's power will depend upon the existence of specific jurisdiction. See id. at 51. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Furthermore, to establish personal jurisdiction, Hannon must show that "the Massachusetts long-arm statute grants jurisdiction and, if it does, that the exercise of jurisdiction under the statute is consistent with the Constitution." Daynard, 290 F.3d at 52.

**A.**

Because we have construed the Massachusetts long-arm statute to be coextensive with the limits allowed by the United States Constitution, we often "sidestep the statutory inquiry and proceed directly to the constitutional analysis." See id. However, Hannon's claim involves Pennsylvania state officials' exercise of their discretion, rather than a conventional contract

or tort claim.  It would be useful therefore to consider first, as the district court did, whether the Massachusetts long-arm statute reaches Beard as the Secretary of the Pennsylvania DOC and Hesse as a prison librarian for the Pennsylvania DOC.  See Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 482 (5th Cir. 2008) (reasoning that, although a long-arm statute was coextensive with the limits of due process, the statute's reach warranted consideration first because the case involved a challenge to a state official rather than a conventional contract or tort claim).

Hannon's assertion of personal jurisdiction under the long-arm statute is based on the portion of that statute providing that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth."  Mass. Gen. Laws ch. 223A, § 3(a).  That provision "should be construed broadly," and "does not require that the defendant have engaged in commercial activity. [The] language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (internal quotation marks omitted).  Physical presence in Massachusetts is not required in order to "transact business" in Massachusetts.  Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F. Supp. 2d 134, 137 (D. Mass. 1999).  For example, in Hahn v. Vermont Law School, we held

-8-

that a law school "transacted business" in Massachusetts when, at plaintiff's request, it mailed application information to him in Massachusetts and later mailed him an offer of admission. 698 F.2d 48, 49 (1st Cir. 1983). We reasoned that "[t]he purposeful actions of [Vermont Law School] in mailing to [plaintiff] in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long-arm statute." Id. at 51. Though the mailing of the application and offer of admission were not substantial contacts, we emphasized that "less is required to support jurisdiction when the cause of action arises from the defendant's contacts with the forum . . . than when it does not." Id.

To support jurisdiction in this case, Hannon alleges that Beard "authorized, directed, and/or effected" his transfer from the Pennsylvania DOC to the Massachusetts DOC pursuant to the Compact. The Compact creates a five-year agreement between the states, and outlines the specific procedures for transferring inmates. According to the terms of the Compact, Pennsylvania was required to send an application to Massachusetts requesting to transfer Hannon, arrange and pay for Hannon's transportation to a Massachusetts institution, transfer funds owed to Hannon to Massachusetts, furnish documents and provide legal advice as necessary to Massachusetts, pre-authorize and pay for Hannon's medical,

psychiatric, and dental care or treatment in Massachusetts, and authorize Hannon's security classification, among other things. Massachusetts, in turn, was obligated to make regular reports to Pennsylvania on Hannon's conduct. See 61 P.S. § 1062; Mass. Gen. Law ch. 125 App., § 2-1. In sum, as Hannon alleges, when Beard arranged for the transfer between the Pennsylvania DOC and the Massachusetts DOC pursuant to an existing, on-going contract between the two, he "caused extensive services to be rendered in Massachusetts, caused payment to be made in Massachusetts, and procured the application of Massachusetts law to [] Hannon's future conduct."

The contacts that Beard would have had to make to arrange for Hannon's transfer from Pennsylvania to Massachusetts are sufficient to constitute "transacting business" under the broadly-construed long-arm statute. The district court erred when it reasoned that because "[t]he decision to transfer plaintiff . . . occurred in Pennsylvania," it lacked jurisdiction over Beard. A defendant need not have been physically present in the forum state in order to have "transacted business" there. See Fairview Mach., 56 F. Supp. 2d at 138. Just as mailing a letter and an offer of admission to Massachusetts was "transacting business" in Hahn, see 698 F.2d at 51, so can actions arranging for the transfer of Hannon to Massachusetts, which necessarily involved at least some

-10-

communication and interaction between Beard in Pennsylvania and his counterparts in Massachusetts.

That Beard's actions were not "commercial" is not relevant, see Ealing Corp., 790 F.2d at 982, nor is the fact that he was a state official. Beard's citation to the Fifth Circuit's decision in Stroman Realty does not help him. That case was filed in Texas and involved a challenge to an Arizona government official's enforcement of Arizona law in Arizona; the action attacked the validity of that law. See Stroman Realty, 513 F.3d at 481. By contrast, Hannon does not challenge the laws that permit a transfer, but rather alleges that Beard initiated the transfer in retaliation for and in order to hinder Hannon's exercise of constitutional rights.

Beard cites no case that suggests that prison officials cannot be subject to personal jurisdiction in a foreign state merely because they are state officials. Certainly, there are constitutional limitations on a plaintiff's ability to hale a prison official into another state, which we address shortly. Under these circumstances, though, we hold that Beard "transacted business" in Massachusetts for purposes of the state's long-arm statute, particularly because the contacts Hannon alleges form the basis for Hannon's claim against Beard.

Hannon's jurisdictional case for Hesse is far less persuasive. Hannon bases his argument on Hesse's responses to a

-11-

number of written requests for legal materials that he sent to her from a Massachusetts prison. At least twice Hesse sent requested materials to a Massachusetts prison librarian (and so advised Hannon), about six times she denied Hannon's requests after receiving advice from legal counsel that she was not obligated to send the materials, and three times she directly sent Hannon the requested material.

These limited interactions do not constitute "transacting business" under the Massachusetts long-arm statute. Hesse did not initiate contact with Hannon, and she did not purposefully direct any action toward Massachusetts. She had nothing to do with Hannon's transfer there, and it was merely incidental that she sent replies to Massachusetts because that was where he happened to have been transferred. Our cases make clear that contacts with the forum state must be "purposeful" in order to constitute the transaction of business. See Ealing Corp., 790 F.2d at 982. Hesse's responses to Hannon's letters were not purposeful contacts with Massachusetts. We therefore hold that the district court did not err when it dismissed Hannon's claim against Hesse for lack of personal jurisdiction because the Massachusetts long-arm statute does not authorize personal jurisdiction over Hesse.

**B.**

Having determined that the Massachusetts long-arm statute permits jurisdiction over Beard, we must decide whether asserting

-12-

jurisdiction over him would comport with the requirements of due process. "In the personal jurisdiction context, we have characterized compliance with the Constitution as implicating three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." See Mass. Sch. of Law, 142 F.3d at 35 (internal quotation marks and citation omitted).

**1.**

The first step to achieving personal jurisdiction is that "a claim must arise out of, or be related to, the defendant's in-forum activities." Id. (internal quotation marks and citation omitted). The relatedness standard is flexible and "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (internal quotation marks and citation omitted). In typical tort claims, our inquiry is "whether the plaintiff has established cause in fact (i.e., the injury would not have occurred but for the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Mass. Sch. of Law, 142 F.3d at 35 (internal quotation marks and citation omitted). Although Hannon alleges a constitutional claim, section 1983 claims have been analogized to tort claims for personal jurisdiction analysis. See, e.g., Stroman Realty, 513 F.3d at 483 ("It also seems normally accurate to describe as torts

-13-

. . . § 1983 suits against public officials for individual misconduct").

Though the relatedness standard has been described as the least developed part of the due process standard, see, e.g., Swiss Am. Bank, Ltd., 274 F.3d at 621, it seems clear that Hannon's claims against Beard arise from Beard's voluntary contacts with Massachusetts. Hannon alleges that Beard ordered him transferred among numerous facilities along the East Coast, including Massachusetts, in retaliation for his numerous lawsuits against the Pennsylvania DOC on behalf of himself and on behalf of other prisoners. Beard's contacts with Massachusetts in arranging for Hannon's transfer are therefore directly related to Hannon's retaliation claim, which is based on the transfer itself. Hannon's alleged constitutional injury would not have occurred "but for" Beard's arrangement for his transfer.

That Hannon was not a party to the Compact or arrangements made between Beard and Massachusetts is not relevant to this relatedness analysis. Though it was not argued in the briefs, Beard's counsel at oral argument stressed that, because Hannon was not a party to the Compact between Pennsylvania and Massachusetts, the Compact and any arrangements made pursuant to it cannot be used by Hannon to assert jurisdiction over Beard. Indeed, Article XXXII of the Intergovernmental Agreement for the Implementation of the Compact restricts any rights under the

agreement to the state parties. However, Beard provided no case law for the proposition that only a party to a contract can use the contract as a basis for asserting personal jurisdiction over another party to the contract, and we conclude that the proposition is unsound as applied to this situation. First, the relatedness requirement focuses on the nexus between the plaintiff's claim and the defendant's contacts with the forum state, not on the relationship between the plaintiff and defendant. See Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). This suggests it does not matter that the Compact was not between Hannon and Beard, but only that it established ties between Beard and Massachusetts, and that it formed the basis of Hannon's complaint.

Second, Hannon's claim is not for breach of contract. He does not argue that his treatment in Massachusetts or even that the transfer to Massachusetts violated the Compact. Rather, Hannon raises a constitutional claim, arguing that the transfer was in retaliation for his exercise of constitutional rights. This claim is more analogous to a tort claim than a contract claim for jurisdictional purposes, see Stroman Realty, 513 F.3d at 483, and tort claims are different than contract claims for relatedness purposes. Thus, our analysis must focus on whether Beard's actions in transferring Hannon to Massachusetts caused Hannon's injury, rather than on the contractual relationship (or lack thereof) between the two.

-15-

Finally, we stress that Hannon's claim based on the unconstitutionality of the transfer itself is critical to our analysis. One of Beard's principal arguments against asserting personal jurisdiction on the basis of participation in the Compact is that it would subject Beard and his counterparts across the country to lawsuits in every state that is a party to the Compact. While we understand his concern, our decision ought not have this affect. Several district courts have declined to exercise personal jurisdiction over out-of-state defendants when prisoners transferred pursuant to the Compact sue their former prison officials in foreign states. See, e.g., Ibrahim v. Dist. of Columbia, 357 F. Supp. 2d 187, 192-93 (D.D.C. 2004); Meyer v. Federal Bureau of Prisons, 940 F. Supp. 9, 12 (D.D.C. 1996); see also Hannon v. Beard, No. 02-1779 (D.D.C. Sept. 26, 2003), aff'd, No. 03-7145, 2005 WL 18052 (D.C. Cir. Jan. 4, 2005). Our holding is not in conflict with those decisions. In those cases, the prisoners sued officials from the sending state for harms that occurred while the prisoner was in the sending state, and attempted to use the contacts of the Compact to assert jurisdiction. According to the reasoning of our holding, those claims would not survive the relatedness inquiry because the alleged contacts (the transfer pursuant to the Compact) are not related to the alleged harm (treatment in the sending state). This case turns on the unique factual situation wherein the harm alleged was directly tied

-16-

to the contacts establishing personal jurisdiction. It is not a free ticket for personal jurisdiction in receiving states over any prison officials who are parties to the Compact. But here, because Hannon's claim arises directly from Beard's contacts with Massachusetts, the claim is sufficiently related under the due process standard. In short, our opinion gives no assistance for a transferred prisoner to assert a claim in the transferee court against the transferor DOC based on pre-transfer grievances.

**2.**

That a defendant's forum-state contacts are related to a plaintiff's claims is not enough to justify an assertion of personal jurisdiction. The defendant's contacts must also "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." Daynard, 290 F.3d at 60. The purposeful availment requirement "ensures that jurisdiction is not based on merely random, isolated or fortuitous contacts with the forum state," Adelson, 510 F.3d at 50 (internal quotation marks omitted), and is based upon the "cornerstones [of] . . . voluntariness and foreseeability," Daynard, 290 F.3d at 61. This means that "[t]he contacts must be voluntary and not based on the unilateral actions of another party" and "must be such that [a defendant] could reasonably anticipate being haled into court

there." Adelson, 510 F.3d at 50 (internal quotation marks and citations omitted). "Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999).

Whether Beard's actions in transferring Hannon from Pennsylvania to Massachusetts were a purposeful availment of the privilege of conducting business in Massachusetts is a close question. But we are convinced that Beard's contacts with Massachusetts were not "random, isolated or fortuitous." See Adelson, 510 F.3d at 50. According to Hannon's factual allegations, Beard intentionally and voluntarily transferred Hannon out of Pennsylvania and into Massachusetts to rid himself of a vexatious prisoner and to retaliate against Hannon for his frequent litigation. In so doing, he made Hannon subject to Massachusetts law. Arguably, Beard benefitted from subjecting Hannon to Massachusetts prisons and Massachusetts law by ridding himself of a troublemaker.

Furthermore, if it is true that Beard's transfer was made for unconstitutional reasons, Beard could not only have foreseen that Hannon would sue him but that Hannon would sue him in Massachusetts. In fact, the Compact provides that, "The sending

-18-

state and receiving state will cooperate in other matters of mutual interest in the defense of transfer-related litigation." That expressly contemplates the possibility of transfer-related litigation, and it seems reasonable to expect that the litigation could occur in either the sending state or the receiving state. Based on the voluntariness of Beard's alleged actions and the foreseeability that the transfer would spur litigation in Massachusetts, we conclude that Beard purposefully availed himself of the privilege of doing business in Massachusetts and established the requisite minimum contacts necessary to satisfy due process concerns.

**3.**

Finally, after considering whether a defendant's contacts are related to a plaintiff's claim and whether the defendant purposefully availed himself of the benefits of doing business in the forum state, we ask whether asserting personal jurisdiction would be reasonable. The factors we examine to consider reasonableness are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Id. at 51.

First, Beard has not shown an unusual hardship would result from having to appear in Massachusetts. It is true that appearing in Massachusetts is more burdensome for Beard than appearing in Pennsylvania. However, "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly," so "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994) (holding that travel between New York and Puerto Rico was not an unusual burden for a defendant). Beard gives no reason why appearing in Massachusetts would be a special burden beyond ordinary inconvenience, so this factor weighs in favor of asserting personal jurisdiction.

Second, Massachusetts may have an interest in adjudicating this dispute. Hannon argues that Massachusetts has a significant interest in ensuring that out-of-state defendants do not retaliate against unwanted prisoners by casting them into Massachusetts. This may be true. Massachusetts may not want prisoners sent to its prisons in retaliation for their exercise of constitutional rights, so it has some interest in adjudicating the dispute.

Third, Hannon has some interest in litigating in Massachusetts to obtain convenient and effective relief. This court "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of

its own convenience." Sawtelle, 70 F.3d at 1395. At the time this action was filed and the district court dismissed Hannon's claims against Beard and Hesse, Hannon was incarcerated in Massachusetts. Over his objection, he has since been transferred to New Jersey. However, he still has legal counsel in Massachusetts, where the rest of this action is being litigated. He therefore maintains a valid interest in litigating his claims in Massachusetts, and we owe some deference to his choice of forum.

Fourth, litigating this issue in Massachusetts would promote the judicial system's interest in obtaining the most effective resolution of the controversy. Hannon has an attorney in Massachusetts and this case has been litigated in Massachusetts for several years already. Changing venue at this point may entail substantial judicial resources and it may be most effective to keep the action in Massachusetts. There is no reason that the Massachusetts court cannot effectively resolve a dispute between Hannon and Beard.

Finally, the interests of all sovereigns in promoting substantive social policies may weigh slightly in Hannon's favor. The substantive social policy, that transfers pursuant to the Compact should not be effected for illegal or retaliatory purposes, suggests that this issue could be litigated in Massachusetts. However, this factor does not weigh particularly in Hannon's favor

because the same interest would be served in a Pennsylvania district court.

Overall, the reasonableness factors weigh in Hannon's favor. Therefore, because Hannon's claims are related to Beard's contacts, and Beard purposefully availed himself of the privilege of doing business in Massachusetts, we hold that it would not offend due process to assert personal jurisdiction over Beard.

## III.

Because an assertion of personal jurisdiction over Beard is authorized by the Massachusetts long-arm statute, and because it comports with constitutional due process, we <u>reverse</u> the district court's order dismissing Hannon's claims against Beard for lack of personal jurisdiction and <u>remand</u> for further proceedings. However, we <u>affirm</u> the district court's dismissal of Hannon's claim against Hesse because the Massachusetts long-arm statute does not permit an assertion of personal jurisdiction over her.

**REVERSED AND REMANDED IN PART, AFFIRMED IN PART. Each party should bear its own costs.**

-22-