Soeun KIM, Plaintiff

v.

Beverly VEGLAS, Kathleen Dennehy, Martin A. Magnusson, Jeffrey Merrill, Carl McHatten, Jane DePalma, Jackie Weddle, John Marshall, Abbe Nelligan, Anne Marie Aucoin, Tom Neville, Nelson Riley, and John Doe Starbird, Defendants.

Civil Action No. 06–11096–RCL.

United States District Court, D. Massachusetts.

April 16, 2009.

Marc J. Goldstein, Krista L. Hawley, Beveridge & Diamond PC, Wellesley, MA, for Plaintiff.

David J. Rentsch, Commonwealth of Massachusetts, Boston, MA, Diane Sleek, Maine Attorney General's Office, Augusta, ME, for Defendants.

MEMORANDUM OF DECISION

YOUNG, District Judge.

## I. INTRODUCTION

On June 22, 2006, the plaintiff Soeun Kim ("Kim") filed suit against various prison officials in Massachusetts and Maine. In his complaint, Kim, a prisoner initially convicted and incarcerated in Maine, alleged that his transfer to a Massachusetts corrections facility violated a variety of his constitutional and statutory rights. One portion of the complaint claimed that various Massachusetts and Maine defendants denied Kim his constitutional right to access the courts by refusing to send him any Maine legal materials unless he provided "exact citations" for the opinions and statutes he required.

### A. Procedural Posture

Kim initially filed his complaint *pro se* on June 22, 2006. [Doc. No. 1.] Kim also filed a motion for a preliminary injunction on August 10, 2006. [Doc. No. 10.] Under the Court's authority to screen the claims of plaintiffs proceeding *in forma pauperis,* Judge Lindsay initially dismissed without prejudice all of Kim's claims against the Maine defendants. [Doc. No. 26.] On December 21, 2006, Kim filed an amended complaint. First Amended Verified Civil Complaint with a Jury Trial Demand ("Cmplt.") [Doc. No. 29]. On January 7, 2008, Judge Lindsay granted Kim's motion for the appointment of pro bono counsel. [Doc. Nos. 76, 77.]

The parties agreed after conferring that in this case's "present posture, the only possible claim remaining in this case against the Maine defendants is the plaintiff's access to the courts claim...." Memorandum of Law in Support of Revised Motion to Dismiss of Maine Defendants ("Def. Mem."), at 3 [Doc. No. 90]. The three Maine prison officials—Martin A. Magnusson ("Magnusson"), Carl McHatten ("McHatten"), and Jackie Weddle ("Weddle") (collectively the "Maine defendants")—moved to dismiss the access to courts claim against them under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [Doc. No. 89.]

### B. Alleged Facts

Kim is a state prisoner initially convicted and incarcerated in Maine. On April 5, 2005, he was transferred from the Maine State Prison to the Massachusetts Correctional Institution—Cedar Junction ("Cedar Junction") pursuant to the New England Interstate Corrections Compact. Cmplt. ¶ 2. Once settled at Cedar Junction, Kim began seeking Massachusetts and Maine legal materials to challenge the legality of his transfer from Maine. Id. ¶ 35. While he easily obtained the requested Massachusetts materials because he was incarcerated in a Massachusetts facility, Kim's attempts to procure relevant Maine materials met persistent and varied obstacles. From mid–2005 until January 2006, Kim's requests were shuttled between a number of Maine and Massachusetts prison officials, including Massachusetts defendants Beverly Veglas, John Marshall, Abbe Nel-

ligan, Jane DePalma, and Ann Marie Aucoin and Maine defendants Magnusson and McHatten, all of whom indicated that they could not aid Kim. Id. at 39–63. Finally, on January 31, 2006, Kim received a letter from Maine defendant Weddle, the law librarian at the Maine State Prison and apparently the only official in Massachusetts or Maine who could provide Kim with the requested legal materials. Ex. A, attached to Cmplt. Weddle's letter explained that "[a]ny requests for law material from the Maine State Prison Law Library should be addressed directly to me [Weddle].... Citations will need to be specific and accurate to correctly provide you with the material you need." Id. On February 10, 2006, Kim wrote back to Weddle explaining that without the benefit of access to a Maine citator, digest, or treatise, it would be impossible for him to provide precise citations for any materials. Cmplt. ¶ 64. Weddle never responded to this letter. Id. Kim still has not been able to access Maine legal materials.

## II. Analysis

### A. Standard of Review

■■■ The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir.2002).[1] In asserting personal jurisdiction, "a party cannot rest upon the pleadings but must adduce evidence of specific facts" to support the exercise of personal jurisdiction. *Daynard v. Ness, Motley, Loadholt, Rich-*

---

1. There are three methods for determining whether a plaintiff has met his burden of establishing personal jurisdiction over a defendant–1) the "prima facie" method; 2) the "preponderance-of-the-evidence" method; and 3) the "likelihood" method. The prima facie method, in which a court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction," *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992), is most commonly used in circumstances such as the instant case, where there are few disputed facts. Neither party discusses which method the Court ought apply to Kim's suit. In the absence of guidance from the parties, the Court applies the prima facie method.

*ardson & Poole, P.A.,* 284 F.Supp.2d 204, 211 (D.Mass.2003) (citing *Foster–Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 145 (1st Cir.1995)). In other words, as in ruling on a motion for summary judgment, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" in making its determinations. *Id.*

## B. This Court Cannot Exercise Personal Jurisdiction Over Magnusson or McHatten

Kim and the Maine defendants (Magnusson, McHatten, and Weddle) agree that Kim's only remaining claim against the Maine defendants is for denial of access to courts, and in his opposition to the Maine defendants' motion, Kim also concedes that Weddle is the only Maine defendant against whom he can possibly assert personal jurisdiction. *See* Kim's Opp. at 14 ("[N]either Magnusson nor McHatten opened themselves up to this Court's jurisdiction as their incidental contacts with Kim in Massachusetts did not cause the constitutional violation at issue. There is no allegation that either Magnusson or McHatten undertook any action but-for which there would not be a legal access claim. Only the actions of defendant Weddle satisfy this analysis."). Thus, as an initial matter, the Court granted Magnusson and McHatten's motion to dismiss under Rule 12(b)(2).

## C. This Court Can Assert Specific Personal Jurisdiction Over Weddle

The only remaining question this Court need answer is whether Kim has adduced sufficient facts to assert personal jurisdiction over Weddle. A plaintiff can establish either specific or general personal jurisdiction over a defendant. *See Harlow v. Children's Hosp.,* 432 F.3d 50, 57 (1st Cir.2005) (explaining the difference between the two types of personal jurisdic-

tion). Kim does not allege that Weddle had "continuous and systematic contacts with" Massachusetts such that this Court could exercise general jurisdiction over Weddle. *Phillips v. Prairie Eye Ctr.,* 530 F.3d 22, 26 (1st Cir.2008). Consequently, Kim must put forward evidence to support the exercise of specific jurisdiction over Weddle. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998). "[T]o establish personal jurisdiction, [Kim] must show that 'the Massachusetts long-arm statute grants jurisdiction and, if it does, that the exercise of jurisdiction under the statute is consistent with the Constitution.'" *Hannon v. Beard,* 524 F.3d 275, 280 (1st Cir. 2008) (quoting *Daynard,* 290 F.3d at 52).

### 1. Weddle's Conduct Satisfies Massachusetts' Long–Arm Statute

Generally, the First Circuit has "construed the Massachusetts long-arm statute to be coextensive with the limits allowed by the United States Constitution," and thus "'sidestep[s] the statutory inquiry and proceed[s] directly to the constitutional analysis.'" *Id.* (quoting *Daynard,* 290 F.3d at 52). Despite the usual leapfrogging of the statutory inquiry, in *Hannon v. Beard,* a 2008 First Circuit case, the court engaged in an independent analysis of the long-arm statute given factual circumstances similar to the instant lawsuit. *Id.* The court explained that the additional analysis was necessary because the plaintiff's claims against out-of-state prison officials for retaliatory transfer and violation of access to the courts "involve[d out-of-state prison officials'] exercise of their discretion, rather than a conventional contract or tort claim." *Id.* As the instant

matter involves like allegations, this Court will also determine whether Kim's complaint satisfies Massachusetts' long-arm statute.

■ Kim alleges that Weddle's conduct satisfies the long-arm statute because his claims "aris[e] from [Weddle's] transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). Courts construe the "transacting business" requirement broadly, as the language "is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982 (1st Cir.1986). "Physical presence in Massachusetts is not required in order to 'transact business' in Massachusetts." *Hannon*, 524 F.3d at 280 (citing *Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.*, 56 F.Supp.2d 134, 137 (D.Mass.1999) (Ponsor, J.)).

Because of similarities between the instant case and *Hannon*, as well as Weddle's reliance on *Hannon*'s holding, a brief discussion of that case is in order. Hannon, a Pennsylvania prisoner transferred to a Massachusetts penitentiary pursuant to the Interstate Corrections Compact, brought two claims against Pennsylvania officials. *Hannon*, 524 F.3d at 278. First, Hannon alleged that the Secretary of the Pennsylvania prison system violated Hannon's First and Fourteenth Amendment rights by transferring him out of Pennsylvania in retaliation for grievances and lawsuits Hannon had filed against prison officials. *Id.* Second, Hannon claimed that he was denied access to Pennsylvania legal materials by a Pennsylvania prison law librarian in a manner that violated his right to access the courts. *Id.*

The court concluded that the Secretary of the prison system fell within the ambit of the long-arm statute while the librarian did not. The contacts that the Secretary necessarily made with Massachusetts in order to effect Hannon's transfer were sufficient to satisfy the long-arm statute because Hannon's cause of action directly arose from those contacts. *Id.* at 281 ("Under these circumstances ... we hold that Beard 'transacted business' in Massachusetts for purposes of the state's long-arm statute, particularly because *the contacts Hannon alleges form the basis for Hannon's claim against [the Secretary]*.") (emphasis added); *see id.* at 280 (stating that insubstantial contact with Massachusetts can be sufficient because "less is required to support jurisdiction when the cause of action arises from the defendant's contacts with the forum ... than when it does not").

In contrast, the court refused to exercise personal jurisdiction over the librarian, who had denied six of Hannon's eleven requests for legal materials after consulting with the prison's legal counsel, because the librarian did not initiate the contact with Hannon and did not purposefully direct any action toward Massachusetts. *Id.* at 281. In this context, sending letters into Massachusetts did not constitute "transacting business" under the Massachusetts long-arm statute.

■ Kim's claims fall somewhere between Hannon's allegations against the Secretary and the librarian. On the one hand, Weddle's conduct in Massachusetts—sending a letter to Kim requiring "exact citations" for requested legal materials—is the specific cause of Kim's alleged injury to his ability to access the courts. The Supreme Court's access to courts jurisprudence requires that prisons provide to inmates either adequate legal assistance or access to an adequate legal library. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The First Circuit previously has condemned library access programs that require an inmate to provide an exact citation without help or

access to a physical library or "starter" materials like treatises, citators, or digests. *See Cepulonis v. Fair*, 732 F.2d 1, 4 (1st Cir.1984) ("It is unrealistic to expect a prisoner to know in advance exactly what materials he needs to consult."); *Rich v. Zitnay*, 644 F.2d 41, 43 (1st Cir.1981) (holding that "the requirement that plaintiffs supply precise citations to the University of Maine Law School is obviously a Catch 22"); *see also Messere v. Fair*, 752 F.Supp. 48, 50 (D.Mass.1990) (Woodlock, J.) ("Because specific citations are required to access materials from the state library, I find that this copying service fails to satisfy constitutional requirements. It is doubtful that many lawyers and judges could do minimally adequate research if they were required to request materials by mail via specific citations."); *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir.2006) (citing *Clayton v. Tansy*, 26 F.3d 980, 982 (10th Cir.1993)); *DeMallory v. Cullen*, 855 F.2d 442, 446–48 (7th Cir. 1988). Here, according to Kim's complaint, Weddle's letter instituted the "exact citation" system, which essentially prohibited Kim from acquiring Maine legal materials, and thus caused Kim's constitutional injury. As with the Secretary in *Hannon*, Weddle's contact with Massachusetts is the sole source of Kim's access to courts claim.[2]

On the other hand, like the librarian in *Hannon*, Weddle merely responded by letter to a request from Kim, and thus her transaction of business in Massachusetts was not profoundly "purposeful." That *Hannon* involved claims similar to those presented by Kim does not, however, carry the day for Weddle. The *Hannon* court appeared to question whether the

Pennsylvania librarian's conduct arose to the level of complete deprivation of access to the courts, as the librarian, on at least five of eleven occasions, provided Hannon with the materials he requested. *Id.* In addition, the court treated the librarian's conduct as a component of Hannon's retaliatory transfer claim, as opposed to as a distinct access to courts violation. Here, it is alleged that Weddle's conduct, like the Secretary's in *Hannon*, directly caused Kim's alleged constitutional injury. This Court is not convinced that the *Hannon* librarian and Weddle are so similarly situated that this Court is bound to follow *Hannon*'s determination regarding Massachusetts' long-arm statute.

On balance, Kim's allegations are sufficient to satisfy the long-arm statute. The First Circuit already has held that a single letter sent into Massachusetts can constitute "transacting business." *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir. 1983). Further, Weddle's "exact citation" system is the direct source of Kim's alleged constitutional injury. He alleges that he can only receive Maine legal materials by requesting them from Weddle, and that Weddle insists that he provide exact citations. Thus, this Court holds that Kim's complaint satisfies Massachusetts' long-arm statute.

### 2. The Exercise of Personal Jurisdiction Over Weddle Comports With the Requirements of Due Process

 Having ruled that Weddle's conduct falls within Massachusetts' long-arm statute, the Court must determine if the exercise of personal jurisdiction would

---

**2.** The Court assumes for the purpose of adjudicating the Maine defendants' motion that Kim's complaint states a claim for relief. Accordingly, nothing in this opinion shall be read as establishing that Kim's allegations are sufficient to make out a claim for denial of the right to access the courts. Further, the Court's decision on this motion in no way precludes any of the remaining defendants from challenging the sufficiency of Kim's allegations or evidence under Federal Rules of Civil Procedure 12(b)(6) or 56.

violate notions of due process. Under the constitutional analysis, "[t]he Due Process Clause requires that 'in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Phillips*, 530 F.3d at 27 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) (some quotation marks omitted). "For specific jurisdiction, the constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness." *Id.*

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir.2007). The Court addresses each category below.

### a. Relatedness

■ In order to satisfy the relatedness requirement, "[t]he evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." *Harlow*, 432 F.3d at 60–61. "There must be more than just an attenuated connection between the contacts and the claim; 'the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case.'" *Phillips*, 530 F.3d at 27 (quoting *Harlow*, 432 F.3d at 61) (some quotation marks omitted).

Thus, Kim must "show a sufficient 'causal nexus' between" Weddle's contacts with Massachusetts and the alleged constitutional tort. *Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd.* 298 F.3d 1, 7 (1st Cir.2002) (quoting *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir.1999)); *see also Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 65 (1st Cir.2002) ("[D]ue process demands something like a proximate cause nexus.") (quotation marks and citations omitted).

■ For the reasons discussed in the analysis of Massachusetts' long-arm statute, Kim's claim satisfies the relatedness requirement. Weddle's conduct was both the "but-for" and proximate cause of Kim's inability to access the courts. The foreseeable result of the letter Weddle sent into Massachusetts was that it would prevent Kim from having meaningful access to legal materials. Consequently, Kim's allegations are sufficiently related to Weddle's conduct in Massachusetts.

### b. Purposeful Availment

■ Kim must also show that Weddle purposefully availed herself of the benefits and privileges of Massachusetts law.

> [P]urposeful availment involves both voluntariness and foreseeability. Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself. The contacts must be deliberate, and not based on the unilateral actions of another party. Foreseeability requires that the contacts also must be of a nature that the defendant could reasonably anticipate being haled into court there.

*Phillips*, 530 F.3d at 28 (citations and quotations marks omitted).

Where an alleged injury sounds in tort[3], as it does here, "the threshold of purposeful availment is lower." *Digital Equipment Corp. v. AltaVista Technology, Inc.,* 960 F.Supp. 456, 469 (D.Mass.1997) (Lasker, J.); *see also Northeastern Land Services, Ltd. v. Schulke,* 988 F.Supp. 54, 59 (D.R.I.1997) (recognizing "the limited relevance of the conventional purposeful availment inquiry in tort actions"). This is so because "[t]he defendant allegedly causing harm in a state may understandably have sought no privileges there; instead the defendant's purpose may be said to be the targeting of the forum state and its residents." *Digital,* 960 F.Supp. at 469; *see also Thompson Trading Ltd. v. Allied Lyons PLC,* 123 F.R.D. 417, 426 (D.R.I. 1989) (Lagueux, J.) ("[O]ne committing a tort in a forum does not purposefully avail himself of the benefits and protections of its laws, since such laws are not supporting and protecting his illegal activities. To the contrary, the forum's laws are likely designed to interfere with his tortious conduct.").

"Indeed, the general rule in this circuit holds that where a defendant's out-of-forum actions intentionally cause tortious injury in the forum, jurisdiction will obtain for claims arising from that injury." *Northeastern Land Services,* 988 F.Supp. at 59 (citing *Hugel v. McNell,* 886 F.2d 1, 4, (1st Cir.1989) (discussing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984))). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir.1999).

Here, Weddle intentionally and voluntarily reached into Massachusetts to contact Kim and restricted his access to the courts by requiring that he provide "exact citations" of the Maine legal documents he required. This single contact is sufficient to satisfy the purposeful availment component of the personal jurisdiction analysis because, by sending the letter to Kim, it was foreseeable that Kim would sue Weddle in Massachusetts for deprivation of his right to access the courts.

### c. Reasonableness

The final step of the personal jurisdiction analysis requires that the exercise of jurisdiction over a specific defendant be reasonable. Courts balance five "Gestalt factors" to determine the reasonableness of personal jurisdiction.

> Those factors are: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson,* 510 F.3d at 51 (quoting *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)).

As for the first factor, "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, [so] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari,* 42 F.3d 53, 64 (1st Cir.1994). Weddle has not indicated that defending Kim's suit in Massachusetts would be an unreasonable burden.

Second, Massachusetts has an interest in adjudicating the dispute because the Commonwealth would be less willing to accept inmates pursuant to the New Eng-

---

3. Claims under section 1983, like Kim's, are generally treated as a type of tort action.

land Interstate Corrections Compact if the prisoners it accepts must bring suit in Maine (with the concomitant security and transportation costs) in order to effectuate their legal rights in the donee state.

■ Third, Kim quite clearly has great interest in accessing the federal courts in Massachusetts; while he cannot access the legal materials necessary to permit him to litigate effectively in Maine, he does have adequate access to Massachusetts legal materials. Further, in Massachusetts, "courts considering jurisdictional issues generally should 'accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience....'" *Foster–Miller,* 46 F.3d at 151 (quoting *Ticketmaster–N.Y., Inc. v. Alioto,* 26 F.3d 201, 211 (1st Cir.1994)). Weddle has produced no compelling reason to disturb Kim's choice of forum.

Fourth, litigating this suit in Massachusetts would promote judicial economy because Kim has already been appointed *pro bono* counsel in this Court, the case has been pending in Massachusetts for several years, and a change of venue would lead to a substantial waste of judicial resources. *See Hannon,* 524 F.3d at 285.

Finally, although the fifth factor does not tilt strongly in either direction, Kim's suit will promote the substantive social policy of ensuring that interstate transfers of prisoners are not utilized as a means of cutting off inmates' ability access the courts to seek redress for injuries suffered at the hands of donor states. Refusing to exercise personal jurisdiction over Weddle would literally leave Kim with no meaningful access to the courts.

Thus, overall, the Gestalt factors tilt firmly in favor of exercising jurisdiction over Weddle. Accordingly, Kim has met his burden of demonstrating that the Court can assert personal jurisdiction over Weddle, and Weddle's motion to dismiss was denied.

## III. CONCLUSION

For the reasons discussed above, on March 26, 2009, the Court granted Magnusson and McHatten's motion to dismiss and denied Weddle's motion to dismiss. [Electronic Order, Mar. 26, 2009.]