Cecil BARRETT, Jr., Cynthia Barrett, Jean Blanco Guerrier, Angelique M. Bastien, Jacqueline Grissett, Craig Grissett, and Steven Parham on behalf of themselves and all others similarly situated

v.

H & R BLOCK, INC., Option One Mortgage Corporation and H & R Block Mortgage Corporation n/k/a Option One Mortgage Services, Inc.[1]

Civil Action No. 08–10157–RWZ.

United States District Court, D. Massachusetts.

Feb. 6, 2009.

---

1. H & R Block Bank, a Federal Savings Bank, Member FDIC, was named as a defendant but has since been voluntarily dismissed from the action.

---

Andrew S. Friedman, Wendy J. Harrison Bonnett Fairbourn Friedman & Balint, P.C., Phoenix, AZ, Charles M. Delbaum, Stuart T. Rossman, Boston, MA, Gary E. Klein, Kevin Costello, Shennan Alexandra Kavanagh, Roddy Klein & Ryan, Boston, MA, for Plaintiffs.

Brian P. Brooks, Kyra A. Grundeman, O'Melveny & Myers LLP, Washington, DC, Charles K. Mone, Kathleen M. Guilfoyle, Campbell, Campbell, Edwards & Conroy, PC, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

ZOBEL, District Judge.

Defendants' motions to dismiss are before the court. For the reasons discussed below, the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied, but H & R Block, Inc.'s motion to dismiss pursuant to Rule 12(b)(2) is allowed.

## I. Background

Plaintiffs bring this putative class action on behalf of themselves and other similarly situated minority homeowners against H & R Block, Inc. ("H & R Block") and its wholly-owned subsidiaries, Option One Mortgage Corporation ("Option One") and H & R Block Mortgage Corporation ("H & R Block Mortgage"). Plaintiffs allege that defendants' "Discretionary Pricing Policy" has a widespread discriminatory impact on minority applicants for home mortgage loans in violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f ("ECOA"), and the Fair Housing Act, 42 U.S.C. §§ 3601–3619 ("FHA").

Plaintiffs allege that H & R Block "offered a full range of home mortgage services through its direct and indirect subsidiaries" Option One and H & R Block Mortgage. (Am. Compl. (Docket # 4) ¶ 18.) Option One was "primarily a wholesale mortgage lender and offered its services through its branches and a national network of mortgage brokers," while H & R Block Mortgage "was a retail mortgage lender making direct-to-consumer loans nationwide." (Id. ¶¶ 21–22.)[2] According to plaintiffs, when a proposed borrower applied for a loan Option One first computed a risk-based financing rate (the "Par Rate") based on objective criteria of creditworthiness. However, Option One then authorized a subjective component in its credit pricing system (the "Discretionary Pricing Policy") to impose additional charges unrelated to the borrower's creditworthiness. H & R Block and H & R Block Mortgage played a role by jointly establishing the Discretionary Pricing Policy and participating in the decisions to grant credit to borrowers, including by applying the Discretionary Pricing Policy. (Id. ¶¶ 53–54.)

---

**2.** Both entities ceased originating loans in 2007.

Plaintiffs allege that "the Discretionary Pricing Policy, by design, caused persons with identical or similar credit scores to pay different amounts for the cost of credit." (*Id.* ¶ 68.) Although facially neutral, the policy had a disproportionately adverse effect on minorities, in that minorities paid more discretionary charges on their home loans than similarly situated white borrowers.

Option One and H & R Block Mortgage have collectively moved to dismiss the complaint entirely for failing to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). H & R Block moves separately for dismissal based on lack of personal jurisdiction and insufficient service of process. Fed.R.Civ.P. 12(b)(2) and 12(b)(5).

## II. The Motion to Dismiss Under Rule 12(b)(6)

■ In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true. *Marrero–Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir.2007). A complaint must allege "a plausible entitlement to relief" in order to survive a motion to dismiss, and "while a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)).

Defendants proffer four arguments in support of their motion to dismiss, which the court addresses sequentially.

## A. Disparate Impact Claims under the ECOA and FHA

■ The FHA prohibits
any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3605(a). The ECOA prohibits any creditor from discriminating against a qualified applicant with respect to any aspect of a credit transaction "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). The Court of Appeals for the First Circuit has adopted "the consensus among the circuits" and ruled that disparate impact claims are permissible under the FHA. *See Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49 (1st Cir.2000); *Macone v. Town of Wakefield*, 277 F.3d 1, 5 (1st Cir.2002). Although the First Circuit has not decided whether disparate impact claims are permissible under the ECOA, the circuit courts and many district courts that have decided the issue have uniformly concluded that they are. *See, e.g., Miller v. Am. Express Co.*, 688 F.2d 1235, 1239–40 (9th Cir.1982); *Bhandari v. First Nat'l Bank of Commerce*, 808 F.2d 1082, 1101 (5th Cir.1987), *vacated and remanded on other grounds*, 492 U.S. 901, 109 S.Ct. 3207, 106 L.Ed.2d 558 (1989); *Golden v. City of Columbus*, 404 F.3d 950, 963 n. 11 (6th Cir.2005) (dictum); *Miller v. Countrywide Bank, N.A.*, 571 F.Supp.2d 251 (D.Mass.2008). Indeed, defendants cite no authority which concludes that the ECOA does not permit disparate impact claims.

Nonetheless, defendants argue that the Supreme Court's decision in *Smith v. City*

*of Jackson,* 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), when read in tandem with its earlier decisions in *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), and *Jackson v. Birmingham Board of Education,* 544 U.S. 167, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005), compels the conclusion that disparate impact claims are not cognizable under either the ECOA or the FHA because neither statute contains language focusing on the "effects of the action ... rather than the motivation for the action." (Mem. of Law in Supp. of Mot. to Dismiss (Docket # 14), 6 (quoting *Smith,* 544 U.S. at 235–36, 125 S.Ct. 1536).) I have previously considered and rejected this argument. *See Alleyne v. Flagstar Bank,* No. 07–cv–12128–RWZ, slip op. at 4–7 (D.Mass. Sept. 12, 2008). In *Alleyne,* I noted that *Smith*—which held that the Age Discrimination in Employment Act ("ADEA") authorizes claims of age discrimination based on disparate impact— does not require adverse effects language as a necessary prerequisite to allowing disparate impact liability. Rather, it "was decided on the basis of a number of canons of statutory interpretation and does not define a unique textual interpretation standard sufficient to invalidate First Circuit precedent on the FHA." *Id.* at 6–7.[3] I also noted that the agency charged with interpreting the ECOA, the Federal Reserve Board ("FRB"), has concluded that Congress intended to allow disparate impact claims under that statute, and "while application of the plurality's textual interpretation of the ADEA in *Smith* would support the conclusion that the ECOA does not allow discriminatory impact claims, its reliance on agency interpretation would suggest the opposite. Therefore, *Smith* provides insufficient guidance to reverse the unanimous conclusions of the FRB and the courts that have considered the issue." *Id.* at 5, 7. I adhere to my prior ruling on this issue.

## B. Failure to Adequately Plead a Disparate Impact Claim

Defendants argue that "[d]iscrimination claims based on a defendant's alleged subjective or discretionary decision-making process require particularized identification of specific practices that allegedly result in a disparate impact," and plaintiffs' general allegations of a "Discretionary Pricing Policy" fall short of this standard. (Docket # 14, 3.)[4]

In *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 990–91, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988), the Supreme Court held that "subjective or discriminatory ... practices may be analyzed under the disparate impact approach," reasoning that "[i]f an employer's undisciplined system of subjective decisionmaking has precisely the same effects as a system pervaded by impermissible inten-

---

**3.** *See also Agostini v. Felton,* 521 U.S. 203, 237–38, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (discouraging lower courts from concluding that "more recent cases have, by implication, overruled an earlier precedent" and "reaffirm[ing] that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions") (internal quotation marks and citation omitted).

**4.** Defendants also briefly assert that the complaint fails to allege a causal connection between the challenged conduct and the statistical disparities, but fail to expound on this argument. (*See* Docket # 14, 9.) Accordingly, I do not consider it. *See United States v. Van Anh,* 523 F.3d 43, 53 n. 8 (1st Cir.2008) (arguments not sufficiently developed are deemed waived).

tional discrimination, it is difficult to see why Title VII's proscription against discriminatory actions should not apply." The Court noted that to establish a prima facie case a plaintiff must "begin by identifying the specific employment practice that is challenged," and is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.* at 994, 108 S.Ct. 2777. The Court reiterated this requirement in *Wards Cove,* noting that "a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack."

■ *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), *superseded in part by statute,* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, *as recognized in Landgraf v. USI Film Prods.,* 511 U.S. 244, 251 n. 3, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Finally, in *Smith,* the Supreme Court rejected a disparate impact claim under the ADEA because plaintiffs "have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers. They have not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers." *Smith,* 544 U.S. at 241, 125 S.Ct. 1536. Relying on *Wards*

*Cove, Watson* and *Smith,* defendants argue that plaintiffs' claim must fail because it is a challenge to their "overall loan origination process that allegedly includes both objective and subjective factors, the aggregate result of which is alleged to have a disparate impact on minority loan applicants." (Docket # 14, 10.) In fact, plaintiffs' challenge is not to the "overall loan origination process," but to the specific "Discretionary Pricing Policy" within that process that permitted loan officers and brokers to impose additional discretionary charges unrelated to a borrower's creditworthiness. (*See* Am. Compl. ¶¶ 36–44.) Plaintiffs have adequately identified the practice at issue: "establishing a par rate keyed to objective indicators of creditworthiness while simultaneously authorizing additional charges keyed to factors unrelated to those criteria." *Miller v. Countrywide Bank, N.A.,* 571 F.Supp.2d 251, 257 (D.Mass.2008).[5] *Cf. Twombly,* 127 S.Ct. at 1964 (noting that Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' ") (citation omitted).[6]

### C. Statute of Limitations

■ The FHA provides that a plaintiff must file suit within two years after "the

---

**5.** It is also noteworthy that *Smith, Watson* and *Wards Cove* were all decided in the context of summary judgment or after a trial. In all three the issue was whether the plaintiffs' *evidence* adequately established a prima facie case of disparate impact, not whether plaintiffs had adequately alleged disparate impact in their complaint. *See Smith,* 544 U.S. at 231, 243, 125 S.Ct. 1536 (challenge to summary judgment ruling); *Wards Cove,* 490 U.S. at 648, 109 S.Ct. 2115 (challenge to findings made after trial); *Watson,* 487 U.S. at 983–84, 108 S.Ct. 2777 (same).

**6.** I note that the complaint also contains a bare allegation that "[d]ue to H & R Block's policies as to where to place its offices and how to market its products, minority borrowers were more likely than white borrowers to apply for credit from H & R Block through its sub-prime subsidiary Option One, or from an Option One authorized broker." (Am. Compl. ¶ 51.) To the extent plaintiffs intend to assert a claim of disparate impact based upon unspecified H & R Block policies relating to office location and marketing (and it is not clear that they do), such a claim is not sufficiently pled.

occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). Actions under ECOA similarly have a two-year statute of limitations. 15 U.S.C. § 1691e(f) ("No such action shall be brought later than two years from the date of the occurrence of the violation . . . ."). Defendants argue that plaintiffs' claims must be dismissed to the extent they are based on alleged conduct which occurred more than two years before the complaint was filed. Plaintiffs respond that various tolling doctrines, including the continuing violations doctrine, the discovery rule and fraudulent concealment by defendants, apply to preserve claims based on conduct extending beyond the two-year period.

Plaintiffs, seven minority homeowners, filed their complaint in February 2008. All of the plaintiffs except two, Cecil Barrett, Jr. and Cynthia Barrett ("the Barretts"), first entered into loan agreements with Option One after February 2006, within the statute of limitations period.[7] The Barretts purchased their home in January 2004, and refinanced their home loan with Option One on two occasions, in August 2005 and April 2006. (Am. Compl. ¶¶ 77, 81.) Defendants argue that the Barretts cannot assert claims based upon the first refinancing in August 2005.

The Supreme Court recognized the application of the continuing violations doctrine in actions brought under the FHA in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). In *Havens,* the Court held that a complaint which alleges a continuing illegal practice, rather than isolated incidents of violative conduct, is timely so long as the last occurrence of the illegal practice happened during the limitations period. *See id.* at 380–81, 102 S.Ct. 1114; *see also id.* at 380, 102 S.Ct. 1114 ("Statutes of limitations . . . are intended to keep stale claims out of the courts. Where the challenged violation is a continuing one, the staleness concern disappears.") (internal citation omitted). Here, plaintiffs allege a continuing illegal practice—the Discretionary Pricing Policy—and that defendants used this practice both when the Barretts first refinanced their loan in August 2005 and again when they refinanced in April 2006, within the limitations period. That is sufficient to render all of the Barretts' FHA claims timely at this stage. *See id.*; *accord Miller v. Countrywide Bank, N.A.,* 571 F.Supp.2d 251, 261–62 (D.Mass.2008).

The question of whether the continuing violations doctrine applies to ECOA claims is less settled. *See Sanders v. USDA Rural Housing,* No. 3–06–0587, 2007 WL 2471799, at *3 (M.D.Tenn. Aug. 28, 2007) (discussing ambiguity in case law). Nonetheless, defendants do not suggest that the ECOA claims should be analyzed differently from the FHA claims, and the court cannot discern any reason why the continuing violations doctrine should not apply. Application of the doctrine here is also consistent with this circuit's recognition of the doctrine in Title VII claims. *See Rosa v. Park W. Bank & Tr. Co.,* 214 F.3d 213, 215 (1st Cir.2000) ("[i]n interpreting the ECOA, this court looks to Title VII case law"); *Sabree v. United Bhd. of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 400–01 (1st Cir.1990) (applying doctrine to Title VII claim). *See also Mil-*

---

7. Plaintiffs Jean Blanco Guerrier and Angelique Bastien purchased their home, with Option One as the lender, in April 2006. Jacqueline Grissett and Craig Grissett held a home loan with a different lender and refinanced this loan with Option One in August 2006. Plaintiff Steven Parham similarly refinanced a previous home loan (entered into with a different lender) with Option One in September 2006. (Am. Compl. ¶¶ 93, 105, 119.)

*ler*, 571 F.Supp.2d at 261–62 (applying continuing violation doctrine to ECOA claim); *Ramirez v. GreenPoint Mortgage Funding, Inc.*, 633 F.Supp.2d 922, 929–30 (N.D.Cal.2008) (same); *Davis v. Gen. Motors Acceptance Corp.*, 406 F.Supp.2d 698, 705–06 (N.D.Miss.2005) (same).

### D. Ability to Simultaneously Pursue ECOA and FHA Claims

 Defendants argue that plaintiffs are not permitted to simultaneously pursue both ECOA and FHA claims. It is true that plaintiffs may only *recover* under one of these theories. *See* 15 U.S.C. § 1691e(i). However, nothing in the statute limits them from proceeding under both theories, and Rule 8 permits plaintiffs to plead alternative theories of liability. Fed.R.Civ.P. 8(d).

Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

### III. H & R Block's Motion to Dismiss

H & R Block moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), asserting that it is not subject to personal jurisdiction in Massachusetts and that it has been improperly served. It argues that it did not originate any of the mortgages at issue and is a holding company that has not transacted any business in Massachusetts and has no contacts within the Commonwealth.

### A. Legal Standards

 Plaintiff bears the burden of establishing jurisdiction over H & R Block. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 25 n. 1 (1st Cir.2008). As with any other motion to dismiss, the court accepts the allegations in the complaint as true and construes the facts in the light most favorable to the plaintiff. *Id.* at 24. The court must then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998). Under the prima facie analysis, the inquiry is "whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Id.* at 26.

 An exercise of jurisdiction must be authorized by state statute and in compliance with the Constitution. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir.2006). The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, has been interpreted to be coextensive with the outer limits of the Constitution. *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972). Accordingly, the state and constitutional inquiry merge. Under circuit precedent,

> The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants. First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

*Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir.2005). Plaintiffs assert that there is both general and specific jurisdiction over H & R Block. "The critical factor in the personal jurisdiction calculus—both general and specific—is the existence of 'minimum contacts' between the

nonresident defendant and the forum." *Negron–Torres v. Verizon Commc'ns, Inc.,* 478 F.3d 19, 24 (1st Cir.2007).

**B. Specific Jurisdiction**

"A court may assert specific jurisdiction over an out-of-state defendant 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" *Negron–Torres,* 478 F.3d at 24 (quoting *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088–89 (1st Cir. 1992)). The First Circuit has affirmed that "the relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court steadfastly rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." *Harlow,* 432 F.3d at 61 (holding that "the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case") (internal citations and quotation marks omitted).

Plaintiffs allege that defendants Option One and H & R Block Mortgage are wholly-owned subsidiaries of H & R Block, which is headquartered in Kansas City, Missouri. (Am. Compl. ¶¶ 18, 21–22.) Further, they assert that H & R Block Bank, which "offers a variety of residential mortgage loan products," commenced operations in 2006, "at which time H & R Block Inc. became a savings and loan holding company." (*Id.* ¶ 19.) Although the complaint sets forth a number of actions taken within the Commonwealth, it conflates H & R Block and H & R Block Bank by referring to them collectively as "H & R Block," and in many instances directs its allegations collectively to "Defendants" as a group, rendering it difficult to discern what contacts, if any, H & R Block had within the Commonwealth. For

example, when plaintiffs allege that "H & R Block … participated in the decisions to grant credit to Plaintiffs including, without limitation, by making the Discretionary Pricing Policy applicable to their loans," (*id.* ¶ 54), it is unclear whether they are referring to H & R Block, H & R Block Bank, or both, and it is certainly unclear whether any decision by H & R Block was made in Massachusetts. *See Mass. Sch. of Law,* 142 F.3d at 36 (rejecting notion that Massachusetts court had personal jurisdiction over defendants who decided to deny a Massachusetts school's accreditation at a meeting in New York, and noting, "[w]e have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative"). Although the court must treat *specific* facts affirmatively alleged by plaintiffs as true, it need not credit conclusory allegations. *Id.* at 34.

In any event, "[t]he prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. In other words, the plaintiff must go beyond the pleadings and make affirmative proof." *Negron–Torres,* 478 F.3d at 23 (internal quotation marks and citations omitted). Plaintiffs have submitted no evidence suggesting that H & R Block participated in formulating or approving the Discretionary Pricing Policy, or had other forum-based activities related to their claims. Indeed, H & R Block directly contradicts plaintiffs' conclusory allegations about its involvement. The Vice President and Secretary of H & R Block avers that it does not set financing rates and terms for the origination of mortgages or finance transactions, does not participate in credit decisions made by Option One, and was not involved in the origination of any of plaintiffs' mortgages. (Aff. of Bret G. Wilson ("Wilson Aff.")

(Docket # 12, Ex. A) ¶¶ 22–25.) Mr. Wilson further avers that H & R Block: (1) is a holding company that is authorized to transact business only in Missouri; (2) does not pay the salaries of any employees of its subsidiaries; (3) has a separate board of directors and keeps separate books and records from its subsidiaries; (4) does not own, lease, or have any real property in Massachusetts; (5) has no offices, agents, employees, mailboxes, telephone listings, bank accounts, or business operations in Massachusetts; (6) does not derive or expect to derive any direct revenue from goods consumed or services rendered in Massachusetts; (7) does not own the "H & R Block" servicemark; (8) does not own, develop, or place any "H & R Block" or "Option One" advertisements; and (9) does not direct or control the day-to-day operations or management of H & R Block Bank, H & R Block Mortgage, or Option One. (*Id.* ¶¶ 3–21.) Under these circumstances, plaintiffs have failed to meet the relatedness requirement and cannot establish specific personal jurisdiction over H & R Block.[8]

## C. General Jurisdiction

"A court has general jurisdiction when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Negron–Torres,* 478 F.3d at 25 (internal quotation marks and citation omitted).

 Plaintiffs do not present sufficient evidence that H & R Block conducts continuous and systematic activity in Massachusetts. Although they assert that H & R Block's corporate filing with the Massachusetts Secretary of State establishes that it is licensed to do business within the Commonwealth, the H & R Block, Inc. entity referenced in the filing ceased to exist in 1993, when it merged into H & R Block Eastern Tax Services, Inc. (*See* Docket # 19, Ex. 1.) The articles of merger confirm this interpretation. (Docket # 25, Ex. A.) Plaintiffs do not proffer any other evidence that H & R Block is registered to do business in Massachusetts. Moreover, as discussed above, Mr. Wilson's affidavit directly contradicts any allegations that H & R Block is active in the Commonwealth. (Wilson Aff. ¶ 9.)

 As a general principle, jurisdiction over a wholly-owned subsidiary does not automatically confer jurisdiction over the parent corporation. *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1091 (1st Cir. 1992). Nonetheless, plaintiffs suggest that H & R Block should be subject to jurisdiction in Massachusetts because of "its efforts to create an image in the public mind of H & R Block as a single financial ser-

---

**8.** *Negron–Torres* is directly on point. In that case, the plaintiff suffered an injury due to the alleged negligence of the local telephone company (the "PRTC"). She sued Verizon Communications, the majority owner of PRTC by virtue of its controlling interest in PRTC's holding company, on the theory that "Verizon Communications exercised its authority over PRTC 'to direct or cause the direction of management and policies' of PRTC," and her cause of action arose "out of Verizon's negligence in guiding, managing, controlling, and/or supervising the policies and proce-

dures [PRTC] implemented under Verizon's management and instruction." 478 F.3d at 25. Verizon provided a declaration directly contradicting these allegations and asserting that it was merely a holding company that did not sell, market, or provide telecommunications services. The First Circuit held that the plaintiff had failed to meet the requirements of the relatedness test because she "provided only conclusory allegations" to demonstrate that the defendant's in-state conduct formed a material element of proof in the case. *Id.*

vices conglomerate." (Docket # 19, 3.) Plaintiffs point to the company's filings with the Securities and Exchange Commission in which H & R Block refers to itself and its subsidiaries as "the Company," "we," "our" and "us," as well as various website and marketing materials that they assert generically refer to "H & R Block." (*Id.* at 11–12.) However, the website and advertising materials submitted by plaintiffs expressly refer to entities other than H & R Block, Inc. (*See, e.g.,* Docket # 19, Ex. 3 (H & R Block Services, Inc.); http://www.hrblock.com/mortgages/index.html (H & R Block Bank).) In any event, H & R Block has expressly stated that it does not own the "H & R Block" servicemark. (Wilson Aff. ¶ 10.) *See Negron–Torres,* 478 F.3d at 26 ("the mere use of a trademark or logo does not suffice to demonstrate the existence of the requisite minimum contacts"). In addition, it is difficult to agree with the proposition that a company may waive any claim of corporate independence by merely collectively referring to itself and its subsidiaries in public filings. Indeed, the case law in this circuit is clear that

> the mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary. There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.

*Id.* at 27 (quoting *Escude Cruz v. Ortho Pharm. Corp.,* 619 F.2d 902, 905 (1st Cir. 1980)). Plaintiffs cite only two cases in support of their argument, and both are easily distinguished. In *Acorn v. Household Int'l, Inc.,* 211 F.Supp.2d 1160 (N.D.Cal.2002), the plaintiffs proffered evidence that the parent company had participated in establishing the challenged lending practices and had dictated the fees charged by its subsidiaries and the specific language of the disclosures provided by its subsidiaries. *See id.* at 1166. This is precisely the evidence lacking in this case. In *Sorenson v. H & R Block, Inc.,* No. 99–10268–DPW, 2002 WL 31194868, at *6 (D.Mass. Aug. 27, 2002), the plaintiffs asserted various claims against H & R Block Eastern Tax Services, Inc., H & R Block Tax Services, Inc. and H & R Block, Inc. for damages stemming from the preparation of their tax returns. Although the tax returns were prepared by H & R Block Eastern Tax Services, Inc., the court extended jurisdiction over H & R Block Tax Services, Inc. based upon plaintiffs' evidence that the latter exercised "pervasive control" over the former. *Id.* It also extended jurisdiction over H & R Block, Inc. because

> "H & R Block" has been held out as one company, which performs only one business (namely that of preparing income tax returns). Certainly, then, there would have been projected to [plaintiffs] sufficient ambiguity about any internal separation in corporate identity and responsibilities to support a "reasonable perception that [the separate corporate entities] were one and the same."

*Id.* (quoting *United Electrical,* 960 F.2d at 1095). Even assuming, without necessarily agreeing, that the reasoning of *Sorenson* is correct, it lacks force in this situation, as all of the plaintiffs allege that they entered into loan agreements with Option One, not an entity nominally similar to H & R Block.[9] Indeed, the loan documents attached to their complaint do not refer-

---

9. (*See* Am. Compl. ¶¶ 77, 81 (Barretts twice refinanced their home loan with Option One); *id.* ¶ 93 (Guerrier and Bastien used Option One as their lender); *id.* ¶ 105 (Grissetts refinanced their loan with Option One); *id.* ¶ 119 (Parham refinanced with Option One).)

ence H & R Block or H & R Block Mortgage at all. (*See* Am. Compl., Exs. 1–12.) Under these circumstances, it is difficult to discern a reasonable basis for plaintiffs to perceive H & R Block and Option One to be the same company.

Plaintiffs have simply not put forth clear evidence demonstrating that H & R Block exercises control over the activities of subsidiaries which have continuous and systematic activity in the Commonwealth and, as discussed above, Mr. Wilson's affidavit expressly contradicts this notion. Accordingly, plaintiffs have not established the existence of general jurisdiction over H & R Block.

### D. Jurisdictional Discovery

■■■ Plaintiffs seek jurisdictional discovery in the event that their allegations are found lacking. Contrary to their assertion, they are not "entitled" to jurisdictional discovery. (Docket #19, 17.) Rather, the court retains "broad discretion" to permit "a modicum of jurisdictional discovery" if the plaintiff puts forth a colorable claim of personal jurisdiction and "present[s] facts to the court which show why jurisdiction would be found if discovery were permitted." *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 626 (1st Cir.2001). "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." *Id.* at 626–27. Here, plaintiffs generally request discovery without any indication of the specific information they would seek or expect to find that would establish personal jurisdiction. Accordingly, the request for jurisdictional discovery is denied. *See id.* at 626. However, plaintiffs will be getting discovery from the remaining de-

fendants. If that discovery develops evidence demonstrating the existence of personal jurisdiction over H & R Block in Massachusetts, plaintiffs may move to have it added as a party again.[10]

### IV. Conclusion

H & R Block's motion to dismiss for lack of personal jurisdiction (Docket #11) is ALLOWED. The motion to dismiss by Option One and H & R Block Mortgage (Docket #13) is DENIED.

---

**10.** As the court lacks jurisdiction over H & R Block, it need not address its argument regarding insufficient service of process.