# United States Court of Appeals
## For the First Circuit

No. 07-2469

CHRISTOPHER PHILLIPS,

Plaintiff, Appellant,

v.

PRAIRIE EYE CENTER,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Circuit Judge,
Merritt,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Pamela A. Smith with whom Law Office of Pamela A. Smith was on brief for appellant.
Marissa I. Delinks with whom CharCretia V. Di Bartolo, William P. Hardy, and Hinshaw & Culbertson LLP were on brief for appellee.

June 12, 2008

---

[*]    Of the Sixth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  This dispute arises from an employment negotiation gone awry.  Christopher Phillips, an ophthalmologist who lived at the time in Massachusetts, interviewed in Illinois for a job with Prairie Eye Center, a full service ophthalmology practice.  After both parties signed an employment contract for Phillips to go work for Prairie Eye in Illinois, the relationship between the two deteriorated.  Phillips never went to work for Prairie Eye.

He filed suit against Prairie Eye in Massachusetts state court asserting personal jurisdiction over the defendant pursuant to the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3.  After Prairie Eye removed the case to federal court, the district court found that Prairie Eye lacked the requisite minimum contacts with Massachusetts and dismissed the case.  We agree and affirm the dismissal.

I.

We accept the allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff, as we are reviewing a dismissal for lack of personal jurisdiction.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).  The facts relevant to determining personal jurisdiction are not in dispute.

Phillips resided in Massachusetts until 2007.  In June 2006, Phillips, who was seeking a new job, posted his résumé on the

-2-

job placement section of the American Academy of Ophthalmology website. Soon thereafter, he received an e-mail invitation for an interview from Sandra Yeh, the owner and president of Prairie Eye Center, located in Springfield, Illinois.

On August 11, 2006, Phillips flew to Springfield to interview with Yeh and other doctors at Prairie Eye. Afterwards, Prairie Eye sent an unsigned employment contract via first class mail to Phillips in Massachusetts. The contract specifically detailed the terms of employment, including duration, compensation, and duties. The parties dispute how much negotiation of the contract occurred while Phillips was in Illinois, but plaintiff does not contest that the unsigned contract he received contained enough material terms that it could be accepted.

On August 20, Yeh sent Phillips an e-mail, which Phillips received in Massachusetts, asking whether Phillips had received the employment contract and asking him if there was anything she could do to help his decisionmaking process. This is the first of Yeh's three e-mail contacts with Massachusetts that Phillips put in the record.[1] A few hours later, Phillips sent Yeh an e-mail, which Yeh

---

[1]    We describe the case in terms of the plaintiff's submissions because the plaintiff bears the burden of establishing jurisdiction. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). In its Motion To Dismiss for Lack of Personal Jurisdiction, Prairie Eye attached seven additional e-mails from Yeh to Phillips, most of them dealing with the scheduling of Phillips's August 11 interview. Even if we were to consider the defendant's submissions, they do not create sufficient contacts to satisfy jurisdictional due

received in Illinois, noting that "[n]early everything [in the contract] looks great, but I [have] just a couple of minor requests to ask of you." Yeh, via an e-mail later that day (and the second of the proffered e-mail contacts), agreed in principle to Phillips's proposed changes and asked him to modify the contract with his changes and mail the contract back to Yeh. Phillips then typed his changes into an addendum, signed the contract and addendum, and the following day, mailed the signed contract and addendum to Yeh in Illinois.

A couple of weeks later, on September 10, Yeh e-mailed Phillips again, in the third and last of the proffered e-mail contacts. Yeh noted that she had made a change to the addendum (specifically with regards to the timing of the partnership offer), and needed Phillips to initial the change and send it back to her. Two days later, Phillips e-mailed Yeh saying, "I will initial the contract and get the original right out to you." He then e-mailed a scanned copy of the initialed contract back to Yeh.

A copy of the contract, executed by both parties, is in the record. The contract, however, was never performed. Soon after the Phillips e-mailed the contract back to Yeh, the relationship between the two fell apart, and Phillips never went to work for Yeh at Prairie Eye Center. How and why the relationship

process requirements.

-4-

soured is not relevant to the jurisdictional question presented to us.

About a month later, on October 20, 2006, Phillips filed suit against Prairie Eye Center in state court in Massachusetts asserting breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing and seeking a declaratory judgment that the contract was null and void. The defendant removed the action to federal court and filed a motion to dismiss for lack of personal jurisdiction. After allowing extensive briefing and holding a motion hearing, the district court dismissed the case for lack of personal jurisdiction by a docket notation.

While this case was on appeal, the defendant, Prairie Eye Center, filed a breach of contract action against Phillips in U.S. District Court for the Central District of Illinois seeking damages and declaratory relief. Phillips, who has since moved to the state of Washington, moved for a stay of that proceeding because of the pending appeal in this case. The federal district court in Illinois denied the stay, and Phillips has asserted the claims he makes here as counterclaims in that case.

II.

A.      Standard of Review and Burden of Proof

We review de novo a district court's decision to dismiss for lack of personal jurisdiction. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).

The district court "may choose from among several methods for determining whether the plaintiff has met [its] burden." Id. (quoting Daynard, 290 F.3d at 50-51) (internal quotation marks omitted). Because the district court did not hold an evidentiary hearing but credited the plaintiff's evidentiary submissions, we construe the court's ruling as employing the prima facie method.[2] This is "the least taxing of these standards from a plaintiff's standpoint." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997).

Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction. Daynard, 290 F.3d at 51. In order to make a prima facie showing of jurisdiction, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The court "must accept the plaintiff's (properly documented) evidentiary proffers as true for

---

[2] The other two methods, the preponderance method and the likelihood method, usually require an evidentiary hearing. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 146 (1st Cir. 1995).

the purpose of determining the adequacy of the prima facie jurisdictional showing," Daynard, 290 F.3d at 51 (quoting Foster-Miller, 46 F.3d at 145) (internal quotation marks omitted), and "construe them in the light most congenial to the plaintiff's jurisdictional claim," id. (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)) (internal quotation mark omitted).

B.        Jurisdictional Analysis

There is no claim here of general jurisdiction. See Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005) (describing the difference between general jurisdiction, which requires that the defendant have continuous and systematic contacts with the state, and specific jurisdiction, where the claim must be related to the defendant's contacts). Phillips bases his claim of specific personal jurisdiction over Prairie Eye on the Massachusetts long-arm statute. We proceed directly to the constitutional analysis, "because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" Daynard, 290 F.3d at 52 (quoting 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972)).

The Due Process Clause requires that "in order to subject a defendant to a judgment in personam, if he be not present within

-7-

the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). For specific jurisdiction, the constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Adelson, 510 F.3d at 49 (quoting Daynard, 290 F.3d at 60). The plaintiff must demonstrate that each of these three requirements is satisfied.

### 1. Relatedness

"The evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Harlow, 432 F.3d at 60-61 (1st Cir. 2005); see also Adelson, 510 F.3d at 49. There must be more than just an attenuated connection between the contacts and the claim; "the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in

-8-

the plaintiff's case."  Harlow, 432 F.3d at 61 (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)) (internal quotation marks omitted).

Phillips brings both a contract claim, breach of the implied covenant of good faith and fair dealing, and a tort claim, breach of fiduciary duty.  Although the standard for relatedness for a tort claim is typically different from that of a contract claim, Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 10 (1st Cir. 2002), here the two claims are sufficiently connected that the difference is of no concern.  Phillips's claim for breach of fiduciary duty concerns the formation of his employment contract.  See, e.g., id. (noting that when "the tort is intentional interference with a contractual . . . relationship, the two inquiries begin to resemble each other").  Thus, here, we look to whether "the defendant's activity in the forum state was 'instrumental either in the formation of the contract or its breach.'"  Adelson, 510 F.3d at 49 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)).

Phillips's case does not contain the typical factors which have led us to conclude there is sufficient relatedness. This is unlike cases where the specific terms of an employment contract were "formalized and entered into" in the forum state, and where the employee was subject to "substantial control and ongoing connection to [the forum state] in the performance of this

-9-

contract."  Id.  Here, Phillips provided no evidence that any negotiations took place in Massachusetts.  In fact, the unsigned employment contract sent to Phillips shortly after his interview in Illinois is both definite and detailed, and it precedes the three e-mails from Yeh to Phillips.  Still, Phillips's claim does arise out of his contractual relationship with Prairie Eye Center and, accepting his allegations as true, Yeh's communications to Phillips, which he received in Massachusetts, were in bad faith. See Daynard, 290 F.3d at 61.  That said, we will assume arguendo that the plaintiff established sufficient relatedness.

### 2.    Purposeful Availment

Phillips must also show that Prairie Eye purposefully availed itself of "the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."  Id. (quoting Foster-Miller, 46 F.3d at 144) (internal quotation mark omitted).  As the formulation suggests, purposeful availment involves both voluntariness and foreseeability.   Id.; see also Adelson, 510 F.3d at 50. Voluntariness requires that the defendant's contacts with the forum state "proximately result from actions by the defendant himself." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  The contacts must be deliberate, and "not based on the unilateral actions of another party."  Adelson, 510 F.3d at 50 (citing Burger

-10-

King, 471 U.S. at 475).  Foreseeability requires that the contacts also must be of a nature that the defendant could "reasonably anticipate being haled into court there."  Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Prairie Eye's contacts with Massachusetts are plainly voluntary.[3]  Prairie Eye knew that Phillips said he was a resident of Massachusetts and mailed the unsigned employment contract to Phillips in Massachusetts.  Prairie Eye does not contest that it knew Phillips was in Massachusetts when Yeh wrote the e-mails.

Phillips relies on these facts to argue that because he accepted the contract in Massachusetts, Prairie Eye should have foreseen that it could be haled into court in Massachusetts.  We have held, however, in a variety of contexts, that the defendant's awareness of the location of the plaintiff is not, on its own,

---

[3]    At oral argument, we raised the question as to whether the voluntariness inquiry should be different for an e-mail contact than for a landline telephone, postal, or face-to-face contact. For the latter types of contacts, voluntariness is clear as the originator of the communication must know its destination before initiating the communication.  For example, someone mailing a letter must write a physical address, which exists in some jurisdiction, on the envelope.  With an e-mail, however, the originator sends a message to an e-mail address, which does not signal the physical location of the recipient.  Generally, the recipient can open the e-mail anywhere in the world.  In this case, voluntariness may be ambiguous because the originator of the communication may not know in which jurisdiction the communication will be received.  This case does not turn on these issues, though.

enough to create personal jurisdiction over a defendant. When a patient argued that jurisdiction in Maine over a Massachusetts hospital was proper because the defendant knew plaintiff resided in Maine, we noted: "Jurisdiction cannot be created by and does not travel with the plaintiff patient wherever she goes." Harlow, 432 F.3d at 63; see also Sawtelle v. Farrell, 70 F.3d 1381, 1392 (1st Cir. 1995) (finding no purposeful availment when "the [defendants'] only connection with [the forum state] was the [plaintiffs'] residence there"). When a plaintiff tire manufacturer argued that a defendant rim manufacturer was subject to personal jurisdiction in Puerto Rico, we noted that even if the defendant had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico, "awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts." Rodriguez, 115 F.3d at 85 (citing Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 112 (1987) (plurality opinion)).

There is little besides awareness here. It stretches too far to say that Prairie Eye, by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts. The Massachusetts Supreme Judicial Court recently found personal jurisdiction over nonresident plaintiffs did not comport with due process where the only contacts consisted of a purchase of an

-12-

insurance policy from a Massachusetts insurer and the mailing of premium payments to Massachusetts.  Moelis v. Berkshire Life Ins. Co., ___ N.E.2d ___, 2008 WL 2122417, at *3 (Mass. May 22, 2008); see also N.H. Ins. Guar. Ass'n v. Markem Corp., 676 N.E.2d 809, 812 (Mass. 1997) (no personal jurisdiction over policyholder defendants where insurance contracts were drafted in New Hampshire, insured activity did not occur in Massachusetts, and only relevant contacts were plaintiff's mailing of policy from Massachusetts to defendant, defendant's mailing of payment to insurer in Massachusetts, and defendant's submission of claims to Massachusetts); 'Automatic' Sprinkler Corp., 280 N.E.2d at 425 (no personal jurisdiction over New York defendant that signed purchase order to buy goods from Massachusetts seller, mailed purchase order to Massachusetts, received invoice from Massachusetts, and sent check to Massachusetts).

The contract was for Phillips to be employed in Illinois, and never for him to be employed in Massachusetts.  See, e.g., Harlow, 432 F.3d at 63 ("In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's . . . need." (quoting Wright v. Yackley, 459 F.2d 287, 289 (9th Cir. 1972)) (block quotation)).

Defendant did not initiate the contact with plaintiff in Massachusetts; rather, it was the other way around.  Phillips posted his résumé on a national website, and was actively seeking

employment outside of Massachusetts. Yeh never entered Massachusetts herself: it was the plaintiff who physically went to Illinois to be interviewed and to discuss a job.

A purpose of the foreseeability requirement is that "personal jurisdiction over nonresidents . . . is a quid for a quo that consists of the state's extending protection or other services to the nonresident." Sawtelle, 70 F.3d at 1392 (quoting Coté v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986)) (alteration omitted) (internal quotation marks omitted); see also Moelis, 2008 WL 2122417, at *3 (noting that jurisdiction is more appropriate "where nonresidents more intentionally take advantage of favorable State policies"). There is no indication nor even an allegation that Prairie Eye availed itself of any of the protections of Massachusetts law or any other services provided by the state. See Phillips Exeter Acad., 196 F.3d at 292. Hence, Prairie Eye's contacts with Massachusetts do not constitute sufficiently purposeful availment to allow for the exercise of jurisdiction.

3.    Reasonableness

In addition, the Gestalt factors weigh strongly against the exercise of jurisdiction here. The Gestalt factors measure reasonableness: even "if such [requisite] contacts exist," the court's exercise of jurisdiction "must comport with 'fair play and substantial justice.'" U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.,

-14-

894 F.2d 9, 11 (1st Cir. 1990) (quoting Burger King, 471 U.S. at 476).

We think it would be unfair to subject Prairie Eye to suit in Massachusetts. First, the burden on the defendant is disproportionate. The defendant's principal place of business is in Illinois, and it has no ongoing connection to Massachusetts. As the defendant informed the district court, it plans to call multiple Illinois witnesses in support of its case, all of whom are outside of the jurisdiction of Massachusetts courts.

Second, while we normally give deference to the plaintiff's choice of forum, see Adelson, 510 F.3d at 52, as the plaintiff no longer lives in Massachusetts, it is hard to see why it would be less burdensome for him to appear in Illinois than in Massachusetts, save that he has retained a Massachusetts lawyer. In addition, efficient administration of justice can easily be accomplished in Illinois, where the plaintiff has already asserted his claims as counterclaims in the civil action that is currently proceeding against him. See Daynard, 290 F.3d at 62-63.

Accordingly, exercising personal jurisdiction over Prairie Eye in Massachusetts would "offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (quoting Milliken, 311 U.S. at 463) (internal quotation marks omitted).

The judgment of the district court is affirmed.