**B.J. TIDWELL INDUSTRIES, INC.,**
**d/b/a Cardell Cabinetry,**
**Plaintiff,**

v.

**Joseph A. ZAWACKI and Mary Lou Zawacki, Defendants.**

**No. CV–09–28–B–W.**

United States District Court,
D. Maine.

Aug. 11, 2009.

Matthew S. Goldfarb, Troubh Heisler, Portland, ME, for Plaintiff.

Wendell Finner, First Coast Consumer Law, Jacksonville Beach, FL, Andrea Bopp Stark, Molleur Law Office, Biddeford, ME, for Defendants.

## ORDER ON MOTION FOR ATTACHMENT AND MOTION TO DISMISS

JOHN A. WOODCOCK, JR., Chief Judge.

A Texas corporation with a principal place of business in San Antonio initiated a lawsuit in the state of Maine against two Florida residents as personal guarantors of a bankrupt Florida corporation for breach of a sales and credit contract between the two corporations. Not surprisingly, the Defendants moved to dismiss on the ground that the Court in Maine lacks jurisdiction over them. Also before the Court is Plaintiff's motion for real estate attachment. The Court concludes it lacks personal jurisdiction over the Defendants, grants the motion to dismiss, and dismisses the motion for attachment as moot.

## I. PROCEDURAL HISTORY

On January 26, 2009, B.J. Tidwell Industries, Inc. d/b/a Cardell Cabinetry (Tidwell) filed a five-count Complaint against Joseph A. Zawacki and Mary Lou Zawacki (the Zawackis). *Compl.* (Docket # 1). Tidwell is a corporation organized under the laws of the state of Texas and has its principal place of business in Texas. *Id.* ¶ 1. The Zawackis are Florida residents and personal guarantors of J & M Distributors, Inc. (J & M), a Florida corporation that filed for bankruptcy. *Id.* ¶¶ 2–3. All five counts in Tidwell's Complaint relate to J & M's alleged failure to pay for goods delivered. *See id.* ¶¶ 8–21. The Complaint includes no federal claims.

On the same date it filed its Complaint, Tidwell moved to attach the Zawackis' real estate in Maine, *Mot. for Real Estate Attach.* (Docket # 3) (*Mot. for Attach.*), and filed an affidavit in support of the motion. *Aff. in Support of Mot. for Real Estate Attach.* (Docket # 4) (*Pl.'s Aff.*). The Zawacki property Tidwell seek to attach is located in Harrington, Maine. *Mot. for Attach.* at 1. On June 8, 2009, the Zawackis filed their opposition, *Defs.' Opp'n of Pl.'s Mot. for Attach.* (Docket # 12) (*Defs.' Opp'n*), and a motion to dismiss the complaint pursuant to Rule 12(b)(2). *Defs.' Mot to Dismiss* (Docket # 13) (*Mot. to Dismiss*). Tidwell opposed the motion to dismiss, *Opp'n to Defs.' Mot. to Dismiss* (Docket # 17) (*Pl.'s Opp'n*), and the Zawackis replied. *Defs.' Reply Mem. Supporting Mot. to Dismiss* (Docket # 18) (*Defs.' Reply*).

## II. DISCUSSION

The Zawackis challenge the Court's authority to exercise personal jurisdiction to attach their real property in Maine or to hear the underlying claims in the Tidwell Complaint.

## A. Legal Standard

■ "It is axiomatic that, to hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir.2008) (internal quotation omitted). "The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir.2002). There are several methods for determining whether a plaintiff has met this burden. *Id.* " 'The most conventional of these methods,' " and the one that applies where there has not been an evidentiary hearing, is the *prima facie* method. *Id.* (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir.1995)). Here, the parties have not requested an evidentiary hearing, and do not disagree with the appropriateness of the *prima facie* method; the Court will apply the "least taxing" *prima facie* method for examining whether Plaintiff has met its burden. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir.2008).[1]

■ Under the *prima facie* standard, the Court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992). To satisfy this standard, "the plaintiff must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." *Id.* (internal quotation omitted). The plaintiff's showing "must be based on evidence of specific facts set forth in the record." *Id.* The plaintiff "may not rely on unsupported allegations in their pleadings," but must instead make affirmative proof. *Id.* In assessing the plaintiff's showing, the Court does not act as a factfinder. *Id.* Rather, "[i]t accepts properly supported proffers of evidence by a plaintiff as true," *id.*, and construes these facts "in the light most congenial to the plaintiff's jurisdictional claim." *Mass. Sch. of Law at Andover, Inc. v. ABA*, 142 F.3d 26, 34 (1st Cir.1998). The Court then "add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Id.*

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Daynard*, 290 F.3d at 51 (internal quotation omitted). Thus, to establish personal jurisdiction over a non-resident defendant, a plaintiff must demonstrate both that Maine's long-arm statute grants jurisdiction and that the exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. *See id.* at 52. However, because the Maine long-arm statute extends "to the fullest extent permitted by the due process clause of the United States Constitution, 14th Amendment," 14 M.R.S.A. § 704–A(1); *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 12, 861 A.2d 662, 666, the constitutional inquiry is all that is required. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir.

---

1. Other methods of analysis, including the "preponderance-of-the-evidence" and "likelihood" standards, usually require an evidentiary hearing and are appropriate when a court "determine[s] that in the circumstances of a particular case it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a *prima facie* showing of facts essential to *in personam* jurisdiction." *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir.1992); *Phillips*, 530 F.3d at 26 n. 2.

2005); *Tice v. Taiwan Shin Yeh Enter. Co.*, 608 F.Supp.2d 119, 121–22 (D.Me. 2009); *Cormier v. Fisher*, 404 F.Supp.2d 357, 360 (D.Me.2005).

■ Federal courts recognize two different types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Harlow*, 432 F.3d at 57; *Foster–Miller, Inc.*, 46 F.3d at 144. General jurisdiction exists over a defendant who has maintained "continuous and systematic" activity in a forum sufficient to establish jurisdiction in that state over all matters including matters unrelated to the defendant's contacts to the forum state. *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir.2005). Specific jurisdiction is narrower in scope and exists only when the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state. *Id.* "The plaintiff need not prove the existence of both types of jurisdiction; either one, standing alone, is sufficient." *Harlow*, 432 F.3d at 57. The general jurisdiction standard, requiring continuous and systematic contacts, is considerably more stringent than the standard for specific jurisdiction which requires only a showing of minimal contacts. *Harlow*, 432 F.3d at 64.

■ For specific jurisdiction, the First Circuit holds that constitutional concerns related to the exercise of personal jurisdiction over a non-resident are satisfied when three conditions are met:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Phillips*, 530 F.3d at 27 (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir.2007)). The plaintiff bears the burden of demonstrating that each of these three requirements is satisfied. *Id.*

■ The Maine Law Court applies a somewhat different formulation, holding that personal jurisdiction exists where:

> (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice.

*Dworman*, 2004 ME 142, ¶ 14, 861 A.2d at 666. Under the Maine test, the plaintiff must prove the first two conditions. *Id.* If the plaintiff succeeds in this endeavor, the burden then shifts to the defendant to prove the negative of the third condition. *Id.*

In some cases, the difference between the Maine test and the federal test may make separate analysis of each appropriate to assure that "a plaintiff [does] not obtain wider personal jurisdiction in a diversity case, merely by bringing its case in federal court." *Me. Helicopters, Inc. v. Lance Aviation, Inc.*, 563 F.Supp.2d 292, 294–95 (D.Me.2008). Here, because the Court concludes that Plaintiff fails to satisfy the Maine test, a separate federal evaluation is unnecessary.

**B. The Record**

The record is largely devoid of jurisdictional facts. Tidwell's Complaint pleads five counts, all of which relate to commercial transactions outside Maine. *See Compl.* ¶¶ 8–21. Tidwell asserts that the Court has personal jurisdiction over the

**12**

Zawackis "[i]nasmuch as the Defendants are summer residents of Maine and owners of real property located in the town of Harrington, County of Washington and State of Maine," *id.* ¶ 4, although neither fact is otherwise supported. The Zawackis do not dispute their ownership of real property in Maine.

The Zawackis, however, do contest Tidwell's allegation that they are summer residents; they claim instead to be year-round residents of Florida. *Mot. to Dismiss* at 1 n. 1 (stating that "Mr. and Mrs. Zawacki are NOT 'summer residents of Maine' as alleged in the Complaint" (emphasis in original)). Tidwell did not respond to the challenge, and produced no evidence to support its contention.

Here, the significant difference between ruling on a garden variety motion to dismiss and a Rule 12(b)(2) motion based on a lack of personal jurisdiction becomes important. In the more common Rule 12(b)(6) motion to dismiss, the Court would accept the facts alleged in the complaint as true, including the allegation of summer residency, and would construe those facts in the light most favorable to Tidwell. *Diaz–Romero v. Mukasey*, 514 F.3d 115, 116 (1st Cir.2008); *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 94 (1st Cir.2007); *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). However, to apply the *prima facie* standard, a court is required "to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit*, 967 F.2d at 675. The First Circuit has stressed that "[t]o make a *prima facie* showing of this calibre, the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts." *Foster–Miller, Inc.*, 46 F.3d at 145.

The plaintiff's evidentiary proffers must be "properly documented." *Id.*

In this case, Tidwell makes a bare allegation that the Zawackis summer in Maine. Summer resident, however, has a wide range of meanings. It could refer to someone who comes to Maine every year in the late spring and does not leave until late fall, or to a person who sporadically visits the state of Maine a handful of days every few years. In view of the ambiguity of the term, under *Boit* and its progeny, Tidwell was required to fill in the blanks and properly document its proffer, detailing where within this spectrum the Zawackis fall. Tidwell, however, chose to rest on its pleadings, and under *Boit*, this is not enough. *Boit*, 967 F.2d at 675 (stating that the " 'plaintiff must go beyond the pleadings and make affirmative proof' " (quoting *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979))); *Negron–Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 23 (1st Cir.2007). In ruling on Defendant's motion to dismiss, therefore, the Court does not credit Tidwell's unsupported assertion that the Zawackis summer in Maine. *See Boit*, 967 F.2d at 675.

Beyond the allegation of summer residency and property ownership, Tidwell filed an affidavit with the Court explaining the basis for its claims against the Zawackis, but it sheds little light on their relation to Maine. *See Pl's Aff.* According to the affidavit, "Plaintiff has made numerous attempts to collect the money owed by Defendants ... without success." *Pl.'s Aff.* ¶ 5. In its Opposition, Tidwell makes several representations absent from the Complaint and otherwise unsupported. Tidwell calls into question the Zawackis' motivation for possessing real property in Maine:

Your undersigned counsel is aware of the desire of guarantors to hide assets in far flung areas of the United States to

put such assets beyond the reach of creditors. There appears to be some interesting reason why the guarantors chose to purchase real property in the State of Maine—so far distant from Florida, and if this Court permits, discovery will find the reasons why the State of Maine was the location of the Defendants' purchase of real property. *Pl.'s Opp'n* at 5.[2] Tidwell alleges that the Zawackis have given a security interest to the Plaintiff in their real property in Maine. *Id.* at 8. According to Tidwell, the property in Harrington was purchased on November 30, 2003. *Id.* at 9. Tidwell alleges that a UCC–1 notice was signed on August 31, 2005, and that Kim A. James, Chief Financial Officer of Tidwell, provided certified letter notice to Mr. Zawacki regarding an outstanding balance in a letter dated July 31, 2008 which warned that counsel had advised Tidwell that it "should seek legal remedies to insure payment of this debt and that includes seeking a foreclosure on the property in Maine that you have provided as collateral on this debt." *Id.* As will be discussed, even if these unsupported assertions are considered, they fail to push Plaintiff's showing over the *prima facie* hurdle.

## C. General Jurisdiction

██ Viewed in the light most favorable to Plaintiff, the record is clearly insufficient to constitute a *prima facie* showing of general personal jurisdiction. Over

thirty years ago, the Supreme Court limited a state's ability to base personal jurisdiction on the presence of property in the forum, holding that jurisdiction must in all cases be justified by "minimum contacts." *Shaffer v. Heitner,* 433 U.S. 186, 211–12, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Trans–Asiatic Oil, Ltd. S.A. v. Apex Oil Co.,* 743 F.2d 956, 958–59 (1st Cir.1984). Here, the only contact in the record between the Zawackis and Maine is their ownership of real property. According to Tidwell, the property was purchased in 2003. There is no information about the type of property or the Zawackis' specific use of the property.[3] Without more, the Court cannot conclude that the Zawackis have now, or have had at any time in the past, continuous and systematic contacts with Maine sufficient to support personal jurisdiction over any claim that might be brought against them. Tidwell has failed to make a *prima facie* showing of general jurisdiction.

## D. Specific Jurisdiction

To determine how a Maine court would assess specific jurisdiction in this matter, the Maine Law Court's decision in *Commerce Bank & Trust Co. v. Dworman* is highly instructive.[4] 2004 ME 142, 861 A.2d 662. In *Dworman,* a Massachusetts bank brought a civil action against a Massachusetts resident in Maine District Court, alleging that the defendant had defaulted on commercial loans for which she

---

2. Notwithstanding Tidwell's suggestion that discovery may yet yield facts supportive of jurisdiction, it has not moved for jurisdictional discovery, nor is it apparent that such a motion would meet with success. *See United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 625–26 (1st Cir.2001) ("[E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." (internal quotation omitted)).

3. In *Shaffer,* the Supreme Court observed that there was no evidence that the defendants had ever "set foot in Delaware." 433 U.S. at 213, 97 S.Ct. 2569. Here, if supported, the allegation that the Zawackis were summer residents could distinguish this case from *Shaffer.* But, there is no evidence that the Zawackis ever planted their feet here.

4. Plaintiff argues that *Dworman* is controlling. *Pl.'s Opp'n* at 5.

had signed as a personal guarantor for several Massachusetts entities. *Id.* ¶¶ 2–3, 861 A.2d at 664. At the same time the bank filed its action, it also sought an *ex parte* attachment of a home owned by the defendant in Maine. *Id.* ¶ 4, 861 A.2d at 664–65. In support of its motion for attachment, the bank filed an affidavit asserting that the defendant had tried to shield property from a judgment against her by transferring the property from her name into trusts and by using her Maine property to secure a loan from a foreign lender. *Id.* After the ex parte attachment was granted, the defendant moved to dismiss the action and to dissolve the attachment. *Id.* ¶ 5, 861 A.2d at 665. After removal to Maine Superior Court, the motions were denied and the case was stayed in deference to a parallel action in Massachusetts. *Id.* The defendant appealed the denial of her motion to dissolve the attachment to the Maine Law Court, contending that Maine state courts lacked jurisdiction over her or her property. *Id.* ¶ 6, 861 A.2d at 665.

In *Dworman,* The Maine Law Court determined that the available record would allow a court to conclude that the defendant had significant contacts with Maine:

> In addition to owning a home and paying taxes, the record indicates that [the defendant] applied for and received a number of permits in Maine including a wetland alteration permit, multiple building permits and a certificate of occupancy. There is also evidence that [the defendant] uses the Ogunquit property as more than a seasonal residence.

*Id.* ¶ 2, 861 A.2d at 664 (noting that service of the suit was accomplished by delivery of the summons and complaint to the defendant's husband at her Maine property).

The Maine Law Court applied the three constitutional criteria. *Id.* ¶ 14, 861 A.2d at 666. Turning first to Maine's interest in the subject matter of the litigation, the *Dworman* Court concluded that "Maine has a legitimate interest in (1) upholding the attachment of property as an accommodation to collection efforts in courts of other jurisdictions, and (2) preventing debtors from using our boundaries as a shelter to shield their persons and their Maine real estate from process and creditors." *Id.* ¶ 15, 861 A.2d at 666–67.

As to the defendant's anticipation of litigation in Maine, the *Dworman* Court concluded that the defendant's contacts with Maine "were not merely fortuitous or incidental":

> [The defendant] purposefully availed herself of the benefits and protections of Maine laws. [The defendant] benefited from state and municipal public services by purchasing residential property here, by granting a mortgage on the property, and by obtaining building and occupancy permits for it. She used her Maine real estate to support applications for loans, and [the plaintiff] asserts that she attempted to conceal assets by attempting to encumber her Maine property with a mortgage to an offshore entity in the British Virgin Islands. Service of the suit was accomplished by delivery of the summons and complaint to [the defendant's] husband at the Ogunquit property in December 2003. [The defendant] also demonstrated that she anticipated litigation in Maine when she admitted that she was aware that her Ogunquit property could at some point be subject to an execution if a judgment is obtained against her in Massachusetts.

*Id.* ¶ 17, 861 A.2d at 667.

On the third criterion, the *Dworman* Court concluded that litigation in Maine was consistent with traditional notions of fair play and substantial justice:

> [The defendant] has had purposeful contact with the State for eighteen years.

There is a risk that [the plaintiff] may not recover from [the defendant] if Maine does not exercise jurisdiction. Finally, jurisdiction is being sought only for the purpose of attaching [the defendant's] property. Any further action is stayed pending litigation of the underlying action that is proceeding in Massachusetts.

*Id.* ¶ 19, 861 A.2d at 667. The *Dworman* Court concluded that jurisdiction was proper under Maine's long-arm statute. *Id.* ¶ 21, 861 A.2d at 667–68.[5]

■ The situation before the Court is markedly different from *Dworman.* Here, the only record contact between the Zawackis and Maine is the ownership of real property. As discussed, there is no evidence as to whether the Zawackis maintain a home on the property, pay taxes on the property, have applied for or received permits in Maine, or ever actually lived at the property, and if so for how long.

■ On the first prong of the Maine test, "whether a legitimate state interest exists goes beyond the State's interest in providing its citizens with a means of redress against noncitizens, and includes factors such as the protection of state industries, the safety of its workers, or the location of witnesses and creditors within its border." *Id.* ¶ 15, 861 A.2d at 666–67 (internal quotation omitted). As for Maine's interest in the pending litigation, Plaintiff has failed to explain why Maine should be interested in the underlying dispute, involving the souring of a business deal between Texas and Florida parties, which never touched the state of Maine. As for Maine's interest in attachment, while there is evidence that "Plaintiff has made numerous attempts to collect the money owed by Defendants … without success," *Pl.'s Aff.* ¶ 5, unlike *Dworman* where a parallel action was proceeding in the Massachusetts courts, there is no evidence of collection efforts in other jurisdictions that Maine might have an interest in accommodating. In terms of asset shielding, counsel's representation as to his "aware[ness] of the desire of guarantors to hide assets in far flung areas of the United States to put such assets beyond the reach of creditors" is insufficient. *Pl.'s Opp'n* at 5. Tidwell has neither placed its assertion in proper form, such as an affidavit, nor moved for jurisdictional discovery to pursue its intuition. Even if Tidwell's representation is credited, a defendant's desire to hide assets is insufficient to establish Maine's interest in attachment where there is no basis to infer that the property in Maine was connected to a manifestation of this desire. Tidwell has failed to satisfy the first condition for personal jurisdiction.

■ The Court need go no further, but nevertheless touches briefly upon the other conditions. On the second prong, "[t]o reasonably anticipate litigation in a particular jurisdiction, one must purposefully avail oneself of the privilege of conducting activities within the jurisdiction and benefit from the protection of its laws." *Dworman,* 2004 ME 142, ¶ 16, 861 A.2d at 667. Tidwell implies, although never explicitly states and offers no evidence to support, that the Zawackis purchased the property in Maine in 2003. *See Pl.'s Opp'n* at 9. Tidwell also alleges that the Zawackis granted a security interest in the property to Tidwell. *Id.* at 8–9. Even if properly supported, it is not evident that this consti-

5. Because the defendant in *Dworman* appealed only the Superior Court judgment denying a motion to dissolve attachment, the Maine Law Court did not have to reach whether the Superior Court also had jurisdiction to hear the underlying action. *See Dworman,* 2004 ME 142, ¶ 1, 861 A.2d at 664.

tutes a sufficient showing of reasonable anticipation under *Dworman*.[6]

▮ To determine whether traditional notions of fair play and substantial justice favor jurisdiction, the Court considers " 'the nature and purpose of a defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties.' " *Dworman*, 2004 ME 142, ¶ 18, 861 A.2d at 667 (quoting *Labbe v. Nissen Corp.*, 404 A.2d 564, 570 (Me.1979)). Focusing on the facts found salient by the *Dworman* Court, if Tidwell's implication is accepted, the Zawackis have owned real property in Maine since 2003. There is no reason to conclude that Tidwell will be unable to recover from the Zawackis if the Court does not exercise jurisdiction.[7] Finally, unlike *Dworman*, Tidwell is not seeking jurisdiction simply for the purpose of attaching the Zawackis' real property, but invokes the Court's jurisdiction to litigate its underlying contract-related claims, none clearly involving the Maine property. In sum, Tidwell has failed to sustain its burden to demonstrate that the Court's exercise of jurisdiction here would be fair or just.

## E. Jurisdiction by Attachment

Because the Maine Law Court in *Dworman* concluded that personal jurisdiction existed under Maine's long-arm statute, it did not reach a separate argument that

---

6. As to the bare allegation of summer residency, the Court previously indicated it will not consider such a vague and unsupported assertion. Nevertheless, even if the allegation were given credence, under either the Maine or First Circuit formulation, a central question remains the nature of the relationship the forum bears to the parties and to the transaction. Using the relatedness portion of the First Circuit specific jurisdiction test, Tidwell bears the burden to demonstrate that the "cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Negron–Torres*, 478 F.3d at 24. Maine makes the same general inquiry, albeit with different language, asking whether the defendant's contacts with the state of Maine were "merely fortuitous or incidental." *Dworman*, 2004 ME 142, ¶ 17, 861 A.2d at 667; *see Lulu, Inc. v. Chesapeake Boats, Inc.*, No. 09–CV–37–B–W, 2009 WL 1448464, at *2–4, 2009 U.S. Dist. LEXIS 47997, at *8–11 (D.Me. May 21, 2009) (determining in the context of a specific jurisdiction analysis that the second prong of the Maine Law Court's jurisdictional inquiry encompasses the requirement that the contact be related to the cause of action). Here, there is no suggestion that Tidwell's cause of action was related in any way to the Zawackis' ownership of property in the state of Maine, and thus Tidwell would not have established the relatedness inquiry or, as cast by Maine, the purposeful availment test.

7. In Shaffer, the Supreme Court responded to the argument that the presence of property in a forum state should be a sufficient basis for jurisdiction over a wrongdoer because otherwise the wrongdoer could move assets to avoid payment of its obligations:

> This justification, however, does not explain why jurisdiction should be recognized without regard to whether the property is present in the State because of an effort to avoid the owner's obligations. Nor does it support jurisdiction to adjudicate the underlying claim. At most, it suggests that a State in which property is located should have jurisdiction to attach that property, by use of proper procedures, as security for a judgment being sought in a forum where the litigation can be maintained consistently with *International Shoe*. Moreover, we know of nothing to justify the assumption that a debtor can avoid paying his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid *in personam* judgment of one State enforceable in all other States.

433 U.S. at 210, 97 S.Ct. 2569 (internal citations and footnotes omitted). The Court is unaware of any efforts by Tidwell to seek judgment against the Zawackis in the courts of any other forum.

attachment was justified based on *in rem* jurisdiction under 14 M.R.S.A. § 504. Under that statute, "[i]n all actions commenced in any court proper to try them, jurisdiction shall be sustained if goods, estate, effects or credits of any defendant are found within the State and attached." *Id.*

The parties did not brief what effect if any 14 M.R.S.A. § 504 has on the jurisdictional analysis. In earlier days, a version of this statute was cited as providing *in rem* jurisdiction over the attached property of non-residents. *See, e.g., Perry v. Griefen,* 99 Me. 420, 422, 59 A. 601, 602 (1904); *Eastman v. Wadleigh,* 65 Me. 251, 254–55 (1875). More recently, it seems to have fallen into disuse.[8] In any event, post-Shaffer, to meet the demands of due process, an exercise of jurisdiction *in rem* must satisfy the strictures placed on any other action. *See Shaffer,* 433 U.S. at 207, 97 S.Ct. 2569. Accordingly, 14 M.R.S.A. § 504 does not change the analysis, or the result.

## III. CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss (Docket # 13) without prejudice. Because Plaintiff has failed to make a *prima facie* showing as to the Court's authority to grant an attachment or hear Plaintiff's underlying claim, the Court dismisses as moot Plaintiff's Motion for Real Estate Attachment (Docket # 3).[9]

SO ORDERED.

---

8. Aside from *Dworman,* the Court found no Maine Law Court decision citing the current statute or its prior versions since *Perry v. Griefen* in 1904.

9. Because Tidwell failed to make a *prima facie* showing of personal jurisdiction to attach, the Court need not reach Defendants' argument that attachment should be denied for lack of evidentiary support. *See Defs.' Opp'n* at 1.